[Cite as *State v. Wright*, 2014-Ohio-5424.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100803**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**STEVEN WRIGHT**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-562470-A

**BEFORE:**  Blackmon, J., Rocco, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**   December 11, 2014

**ATTORNEY FOR APPELLANT**

Jeffrey S. Richardson
Richardson & Kucharski Co., L.P.A.
1200 West 3rd Street, Suite 190
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

John Patrick Colan
Gregory Paul
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant Steven Wright ("Wright") appeals his convictions and assigns the following errors for our review:

I. The defendant-appellant's due process rights and rights to a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution were violated by ineffective assistance of counsel.

II. The trial court erred and denied defendant-appellant due process of law and his right to a fair trial by allowing evidence of prior bad acts of the defendant-appellant.

III. The trial court erred and denied defendant-appellant due process of law and his right to a fair trial by allowing hearsay statements into evidence.

IV. The trial court erred to the prejudice of the defendant-appellant when it overruled his motion to suppress challenging the lawfulness of the police search and seizure, in violation of his constitutional rights against unreasonable search and seizure as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution.

V. The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).

VI. The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

**{¶2}** Having reviewed the record and pertinent law, we affirm Wright's convictions. The apposite facts follow.

**{¶3}** On May 15, 2012, the Cuyahoga County Grand Jury indicted Wright on one count of attempted murder, three counts of arson, and one count of aggravated arson. On May 21, 2012, Wright pleaded not guilty to the charges at his arraignment. Thereafter, numerous pretrials were conducted, and on October 24, 2013, a jury trial began.

## Jury Trial

**{¶4}** At trial, the testimony of 21 state witnesses and one defense witness established that in the early morning of July 16, 2011, motorists traveling along Interstate 480 in North

Olmsted, Ohio reported seeing a blaze off the highway. Patrolmen Gorden Goodman and Patrick Skullin of the North Olmsted Police Department, who were on separate routine patrols, immediately responded to the scene of the fire. The two patrolmen worked feverishly to rescue the occupants, Betty Wright,[1] the then 77-year-old owner of the house, Heather Hammill, a caretaker, as well as Hammill's 10-year-old son, Joe Voelzow.

{¶5} As Patrolman Goodman was assisting Betty Wright across the street to a neighbor's house, she indicated that she could not believe that her son did what he said he was going to do. Betty Wright's statement was an apparent reference to threats her son had made approximately six days earlier, when she asked him to leave the house following a heated argument. Betty Wright also indicated to the neighbor, Rita Gross, that she had evicted her son and he told her that if she kicked him out, he would burn the house down.

{¶6} At the scene, the patrolmen observed white paint smeared all over the car belonging to Betty Wright and to the truck belonging to Hammill. Both vehicles were removed to preserve evidence of possible vandalism. The first responder also found a cigarette lighter on the lawn of the home. Eventually, through the mutual aid of surrounding jurisdictions, the North Olmsted Fire Department extinguished the fire.

{¶7} Shortly before noon that day, as the first responders and fire investigators were leaving the scene, police officers observed Wright walking towards his mother's home, shirtless and carrying a bag. As Wright's approach got closer, the officers observed a white substance smeared all over his hands. On closer inspection, noting the distinct similarity with the white substance smeared on Betty Wright's and Hammill's vehicles, the officers arrested Wright.

---

[1]Betty Wright passed away from lung cancer prior to the commencement of the trial.

**{¶8}** Subsequently, the white substance from Wright's hand, as well as his clothing, boots, and cell phone were collected and sent to State Fire Marshal Forensic Lab and the Ohio Bureau of Criminal Identification for testing. After testing, the white substance on Wright's hand was found to have the same chemical composition as the white substance smeared all over the two vehicles.

**{¶9}** The fire investigator opined that the fire was intentionally set and that it started on the side of the house with the aid of an accelerant containing heavy petroleum distillate product. The petroleum distillate product was also found on the boots Wright was wearing on the morning he was arrested. The investigation determined that the fire did not start inside the house.

**{¶10}** On October 29, 2013, the jury returned guilty verdicts on all counts. On November 25, 2013, the trial court sentenced Wright to 13 years in prison.

### Ineffective Assistance of Counsel

**{¶11}** In the first assigned error, Wright argues he was denied the effective assistance of counsel.

**{¶12}** To succeed on a claim of ineffective assistance, a defendant must establish that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Counsel will only be considered deficient if his or her conduct fell below an objective standard of reasonableness. *Strickland* at 688.

**{¶13}** In *Strickland*, the United States Supreme Court also stated that a court's scrutiny of an attorney's work must be deferential. The court further stated that it is too tempting for an appellant to second-guess his attorney after conviction and appeal and that it would be all too

easy for a court to conclude that a specific act or omission was deficient, especially when examining the matter in hindsight. Accordingly, this court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and the defendant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id*. at 689. Further, to establish resulting prejudice, a defendant must show that the outcome of the proceedings would have been different but for counsel's deficient performance. *Id*. at 694.

{¶14} In the instant case, Wright argues trial counsel was ineffective because he failed to secure the appearance of Janet Reyes, Patrick Wyatt, and Daniel Chaney. Wright claims all three witnesses would have been critical to his defense.

{¶15} First, Wright contends that Reyes, an employee of Extended Stay America in North Olmsted, where he and his mother stayed for over a month after the fire, would have testified that he had a good relationship with his mother. However, we are uncertain what light Reyes could have shed on the relationship between Wright and his mother, because there is no indication how much interaction Reyes had with them, and no indication whether she was aware that there was a fire. Importantly, there is no indication that Reyes was ever privy to the mother and son relationship prior to the fire.

{¶16} Second, Wright contends that Patrick Wyatt, the insurance investigator hired by Nationwide, would have testified that his mother indicated in a telephone interview that she did not believe Wright started the fire. Wyatt's alleged anticipated testimony might have been eyed by the jury with caution, because it too would have been a post-fire interaction between a remorseful son and a mother who, despite what her child had done, might not want that child to be prosecuted.

**{¶17}** Third, Wright contends that Chaney should have been secured, but admits that he is unclear what the substance of his testimony would have been. As such, we conclude trial counsel would have had a difficult time assessing Chaney's relevance to the proceedings at hand.

**{¶18}** Here, as discussed above, because the testimony of Reyes, Wyatt, and Chaney would not have been relevant, because two of the potential witnesses observed Wright's interaction with his mother was after the fire occurred, and because Wright concedes that he was uncertain what the testimony of the third potential would have been, we decline to find that trial counsel's tactical decision not to secure their presence at trial constituted deficient performance.

**{¶19}** Finally, based on the foregoing, Wright has failed to show that the absence of the aforementioned three possible witnesses resulted in prejudice. Consequently, we decline to conclude that Wright was denied the effective assistance of counsel. Accordingly, we overrule the first assigned error.

**Other Acts Evidence**

**{¶20}** In the second assigned error, Wright argues the trial court erred when it allowed the state to introduce evidence about disturbance at his mother's home the week prior to the fire.

**{¶21}** We review the admission of evidence under an abuse of discretion standard. *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984). "Abuse of discretion" connotes more than error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶22}** Pursuant to Evid.R. 404(B),

> [E]vidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character as to criminal propensity. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Id.*

**{¶23}** Rule 404(B) is codified in R.C. 2945.59, which provides that:

> [I]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶24}** Recently, in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, the Ohio Supreme Court revisited and addressed this very issue. The Ohio Supreme Court concluded that Evid.R. 404(B) is in accord with R.C. 2945.59 in that it precludes the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but does not preclude admission of that evidence for other purposes, e.g., to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.*

**{¶25}** In the instant case, at trial, three witnesses, including Wright's brother, Fred, testified about the disturbance the week prior to the fire. Fred testified that Wright was upset because Hammill had entered their mother's life, literally began living there, and appeared to be

taking advantage of their mother. Fred testified that his brother was very upset at being asked to leave the house. Fred testified that although, he did not care for Hammill, he went to the house when summoned, to make sure Wright left without incident. Fred testified that he found the living room in disarray and their mother upset.

{¶26} Hammill testified that she too was summoned by Wright's mother on the day of the disturbance. Hammill testified that Wright, as well as his girlfriend, threatened her with physical harm. Hammill testified that Wright's mother called the police and they arrived a short while later.

{¶27} Officer Eric Morgan of the North Olmsted Police Department confirmed that he responded to Mrs. Wright's home on the day of the disturbance. Officer Morgan testified that by the time he arrived, it had been decided that Wright would leave the house to avoid any future problems.

{¶28} Here, in accord with the Ohio Supreme Court's recent pronouncement in *Williams supra*, the state's introduction of testimony regarding the disturbance was pertinent to establish Wright's motive for setting the fire in retaliation for being asked to leave his mother's home.

{¶29} As such, the trial court did not abuse its discretion in admitting the testimony regarding the disturbance almost a week prior to the fire. Accordingly, we overrule the second assigned error.

### Hearsay Evidence

{¶30} In the third assigned error, Wright argues the trial court erred when it admitted hearsay testimony. Specifically, Wright argues that the trial court should not have allowed Patrolman Goodman to testify that Wright's mother stated immediately after the fire that "I can't believe my son did this. I can't believe he did what he said he was going to do."

**{¶31}** Wright also argues the trial court should have excluded neighbor Rita Gross's testimony that Wright's mother told her, as the house was burning, that Wright had stated that he would burn the house down if she kicked him out of the house.

**{¶32}** Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence.

**{¶33}** The Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. Constitution  Amendment VI.  In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination."

**{¶34}** The Court distinguished between testimonial and nontestimonial hearsay and held that only testimonial statements implicate the Confrontation Clause. *Id*.  According to *Crawford*, the initial analysis to be made in determining whether a defendant's right to confrontation has been violated by the admission of out-of-court statements that are not subject to cross-examination "is not whether [the statements] are reliable but whether they are testimonial in nature." *Toledo v. Sailes*, 180 Ohio App.3d 56, 2008-Ohio-6400, 904 N.E.2d 543 (6th Dist.), ¶ 13, citing *Crawford*, *supra*, at 61, 124 S.Ct. 1354, 158 L.Ed.2d 177.

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to

establish or prove past events potentially relevant to later prosecution." *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

{¶35} Thus, to determine whether a statement is testimonial or nontestimonial, we inquire "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the case." *United States v. Cromer*, 389 F.3d 662, 675 (C.A.6, 2004); *see also State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, paragraph two of the syllabus.

{¶36} In the instant case, Wright's mother's statement to Patrolman Goodman is subject to the Confrontation Clause, because a reasonable person in the mother's position would anticipate her statement being used against her son in investigating and prosecuting the case.

{¶37} However, Wright's mother made the same statement to her neighbor, Gross. The statement to Gross was not testimonial, because a reasonable person in the mother's position would not anticipate this statement being used against her son in investigating and prosecuting the case. As such, this statement to Gross falls under one of the firmly established exceptions to the hearsay rule, namely, an excited utterance. *State v. Richardson*, 6th Dist. Lucas No. L-07-1214, 2010-Ohio-471.

{¶38} Evid.R. 803(2) defines an "excited utterance" as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

{¶39} Excited utterances are admissible as an exception to the hearsay rule because they are "the product of reactive rather than reflective thinking and thus, are believed inherently reliable." *State v. Ducey*, 10th Dist. Franklin No. 03AP-944, 2004-Ohio-3833, ¶ 17, citing *State v. Taylor*, 66 Ohio St.3d 295, 300, 612 N.E.2d 316 (1993).

**{¶40}** "Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense." *State v. Collins*, 8th Dist. Cuyahoga No. 99659, 2013-Ohio-5579, citing *Taylor* at 300, quoting Weissenberger, *Evidence*, Section 803.16, at 1 (1992).

**{¶41}** For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) a startling event produced a nervous excitement in the declarant, (2) the statement was made while still under the stress of excitement caused by the event, (3) the statement related to the startling event, and (4) the declarant personally observed the startling event. *See State v. Ray*, 189 Ohio App.3d 292, 2010-Ohio-2348, 938 N.E.2d 378 (8th Dist.).

**{¶42}** Here, the two aforementioned identical statements, one testimonal and the other nontestimonial, were made to separate individuals within minutes of each other, while Wright's mother was experiencing the stress and trauma of watching her home engulfed in flames. Thus, Wright's mother had no time for reflective thought. Consequently, as noted above, events such as that experienced by Wright's mother generally renders the declarant incapable of fabrication.

**{¶43}** As such, the trial court did not abuse its discretion in admitting into evidence the hearsay testimony of Patrolman Goodman and Rita Gross under the excited utterance exception to the hearsay rule. Further, because Wright's mother made the identical statement to both Patrolman Goodman and to the neighbor, allowing Patrolman Goodman to testify about the mother's statement was harmless. Accordingly, we overrule the third assigned error.

## Motion to Suppress

{¶44} In the fourth assigned error, Wright argues the trial court erred when it overruled his motion to suppress because the police officers had no probable cause to seize or arrest him on the morning following the fire.

{¶45} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *Euclid v. Jones*, 8th Dist. Cuyahoga No. 97868, 2012-Ohio-3960. The reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Shabazz*, 8th Dist. Cuyahoga No. 97563, 2012-Ohio-3367, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). The application of the law to those facts is subject to de novo review. *State v. Polk*, 8th Dist. Cuyahoga No. 84361, 2005-Ohio-774, ¶ 2.

{¶46} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, with some exceptions. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A warrantless arrest is unconstitutional unless the arresting officer has probable cause to make the arrest at that time. *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974).

{¶47} Probable cause exists when officers have "'facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information' that would sufficiently 'warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *State v. Fannin*, 8th Dist. Cuyahoga No. 79991, 2002-Ohio-6312, quoting *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶48} Furthermore, the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20

L.Ed.2d 889 (1968). In deciding whether reasonable suspicion exists, courts must examine the "'totality of the circumstances' of each case to determine whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing.'" *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *see also State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus, citing *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980).

{¶49} In the instant case, under the totality of the circumstances, the police officers had a particularized and objective basis for suspecting Wright of illegal wrongdoing. As previously noted, when Wright approached his mother's home the morning after the fire, his hands were covered in the same white paint-like substance that was smeared all over the vehicle in the driveway. At that point, the police officers had probable cause to suspect Wright of at least vandalizing the vehicle. As such, the trial court properly overruled the motion to suppress. Accordingly, we overrule the fourth assigned error.

## Sufficiency of the Evidence

{¶50} In the fifth assigned error, Wright argues that his motion for acquittal should have been granted because the state failed to present sufficient evidence that he was responsible for starting the fire.

{¶51} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and a sufficiency of the evidence review require the same analysis. *State v. Houston*, 8th Dist. Cuyahoga No. 100655, 2014-Ohio-3911, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386.

{¶52} In analyzing whether a conviction is supported by sufficient evidence, the reviewing court must view the evidence "in the light most favorable to the prosecution" and ask whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Carter*, 72 Ohio St.3d 545, 1995-Ohio-104, 651 N.E.2d 965.

{¶53} In the instant case, Ralph Dolence, the fire investigator hired to determine the cause of the fire opined that the fire was deliberately set and was an act of arson. Of note, the investigation ruled out any notion that the fire started inside the house. In addition, the fire investigator specifically testified that the fire was set using an accelerant, containing a petroleum distillate product, at the side of the house. Further, the same accelerant that was determined to have been used to start the fire, was also found on the boots Wright was wearing on the morning he was arrested.

{¶54} Further, the white substance found on Wright's hands when he was arrested, contained the same chemical composition as the substance found smeared on the two vehicles in the driveway at the time of the fire. At trial, one of the slides shown during the arson investigator's power point presentation clearly depicts finger marks in the white substance splattered on the vehicles.

{¶55} Consequently, construing the evidence in the light most favorable to the state, under the facts of this case, there was sufficient evidence presented that Wright started the fire. There was no evidence that the fire was started by anything inside the house, instead reliable conclusive evidence that it was set outside the house, and ample evidence that Wright had motive

and intent to set the fire in retaliation and in anger for being evicted by his mother from his childhood home. Accordingly, we overrule the fifth assigned error.

### Manifest Weight of the Evidence

{¶56} In the sixth assigned error, Wright argues his convictions were against the manifest weight of the evidence.

{¶57} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id*. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id*. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id*. at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id*. at ¶ 25.

{¶58} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id*.

{¶59} In the instant case Wright contends that his defense expert, Timothy Wilhelm, hired to opine on the cause of the fire, disagreed with Dolence's opinion that the fire was intentionally set.

{¶60} Preliminarily, we note, Wilhelm testified that he never actually went to the scene of the fire. Wilhelm also admitted that had he been able to go to the scene shortly after the fire, he would have been able to produce a more thorough report. At trial, Wilhelm testified in pertinent part as follows:

Q. You agree with the origin of this fire, correct?

A. I do.

Q. Now, you claim that you're not able to determine the cause of this fire because you didn't have enough data; is that correct?

A. That's correct.

Q. Would have physically being on the scene, smelling it and seeing it, talking to people on the scene, observing the scene, given you more data?

A. Absolutely.

Q. Now, you mentioned that Mr. Dolence presumed this was arson from the start, right?

A. I believe he indicated that in his report when he said that a suspect was in custody for the fire.

Q. Where does he presume — doesn't he not go through methodically all potential causes of this fire: electrical, furnace, boiler, exterior electrical, lightning even? Doesn't he eliminate all these potential ignition causes of the fire?

A. Yes, sir, he does.

Q. He rules them out, correct?

A. He does.

Q. Based on what you reviewed, wouldn't you agree that all of those things should be ruled out as the cause of this fire?

A.    The problem with that is just because it isn't A, B, C, doesn't really mean it's D.

Q.    But if it's none of those things, is it in your opinion —

A.    It wasn't A, B, or C, correct.

Q.    So all those things he went over, methodically went through at the house, you would agree that none of those things caused the fire?

A.    Absolutely.

Tr. 678-680.

{¶61} Here, despite Wright's contention that Wilhelm disputes Dolence's determination that the fire was an act of arson, the above excerpt, as well as elsewhere in the record, reveals that Wilhelm does not dispute that all other possible causes of the fire were ruled out.   As such, after weighing the evidence, all inferences, and any discrepancies, we cannot find that a manifest miscarriage of justice occurred in this case. Consequently, Wright's convictions are not against the manifest weight of the evidence.    Accordingly, we overrule the sixth assigned error.

{¶62} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.   The defendant's convictions having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

KENNETH A. ROCCO, P.J., and
EILEEN A. GALLAGHER, J., CONCUR