[Cite as *Cleveland v. Greear*, 2020-Ohio-29.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                          :

    Plaintiff-Appellee,              :

                              No. 108190

v.                                          :

KENNETH GREEAR,                             :

    Defendant-Appellant.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** VACATED AND REMANDED
**RELEASED AND JOURNALIZED:** January 9, 2020

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 18CRB011420

---

### *Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, and Karrie D. Howard, Sharon Ross, Marco A. Tanudra and Christopher Enoch, Assistant Prosecuting Attorneys, *for appellee.*

Web Norman Law, Inc., L.L.C., and William Norman, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant, Kenneth Greear ("appellant"), brings the instant appeal challenging his conviction for domestic violence. Specifically, appellant argues that his conviction for domestic violence was based on insufficient evidence

and was against the manifest weight of the evidence, and that the trial court erred in admitting hearsay statements. After a thorough review of the record and law, this court vacates appellant's conviction and sentence, and remands for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶ 2} On July 14, 2018, appellant was charged in a two-count complaint in Cleveland Municipal Court with one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor, and one count of unlawful restraint in violation of R.C. 2905.03(A), a third-degree misdemeanor. These offenses were alleged to have occurred on July 12, 2018, and were the result of an alleged physical altercation between appellant and his girlfriend, W.V. As of July 12, appellant and W.V. were dating and lived together in Cleveland in appellant's home. On, July 14, 2018, appellant pled not guilty to the complaint and a temporary protection order was issued against appellant.

{¶ 3} On July 12, 2018, appellant and W.V. were at a grocery store when they engaged in a verbal argument as to the whereabouts of appellant's lighter. As a result of the argument, W.V. left the grocery store and returned home. Appellant then returned home sometime after W.V. left the grocery store. Back at the home, appellant again confronted W.V. as to the whereabouts of the lighter. Appellant then became upset and allegedly physically assaulted W.V. Appellant pushed W.V. to the ground and kicked her in the face. Appellant then pressed his whole body weight

down on W.V.'s face as she lay on the ground. As a result, W.V. suffered a bruised and bloodied lip.

{¶ 4} Approximately one hour after the alleged assault, W.V. called 911 and requested police assistance. W.V. stated to the 911 operator "my boyfriend accused me of taking a lighter and he choked me and kicked me in my face." W.V. further stated that "I can't talk right because my lip is popped up." Sometime after W.V. placed the 911 call, Cleveland police officers responded to the home and spoke with W.V. Appellant had left the home prior to officers responding. Police officer body camera captured W.V.'s encounter with responding officers. In the body camera footage, W.V. stated to the responding officers that appellant was "kicking on my head" and appellant "put all his weight on my head, stomping on my head, my lip was pouring blood."

{¶ 5} On July 19, 2018, at the first scheduled pretrial, W.V. appeared and requested that the trial court terminate the temporary protection order. The trial court granted W.V.'s request, and the temporary protection order was terminated. The matter then proceeded to a bench trial on November 14, 2018.

{¶ 6} Plaintiff-appellee, the city of Cleveland ("city"), presented one witness, W.V., in its case-in-chief. Appellant presented no witnesses. The trial court found appellant guilty of domestic violence, but not guilty of unlawful restraint. The trial court ordered a presentence investigation report and continued the matter for sentencing to December 5, 2018.

{¶ 7} On November 29, 2018, appellant filed a "motion for acquittal or alternatively a motion for a new trial" and a "motion for leave to file a brief in support of out of time motion." On December 4, 2018, appellant filed a brief in support of his motion for acquittal or motion for a new trial. On December 5, 2018, the trial court continued the matter to January 3, 2019, to allow the city time to respond to appellant's motions.

{¶ 8} On December 5, 2018, appellant was apprehended on an arrest warrant. The arrest warrant was issued regarding an unrelated matter in the state of Michigan. The trial court held a hearing on December 21, 2018, related to the extradition to Michigan, and at that time, appellant's counsel orally withdrew his motion for acquittal or motion for a new trial.

{¶ 9} On January 3, 2019, the trial court held a sentencing hearing and sentenced appellant to 180 days jail with 160 days being suspended. The trial court placed appellant on community control sanctions for a period of one year and ordered him to complete a Domestic Intervention Education Training program.

{¶ 10} Appellant filed the instant appeal on February 6, 2019. He assigns three errors for our review:

> I. The [city] failed to offer sufficient proof to allow a reasonable fact-finder to find [appellant] guilty beyond a reasonable doubt.
>
> II. The manifest weight of the evidence did not support a conviction for domestic violence.
>
> III. The trial court erred in admitting out-of-court statements to 911 operator and police.

We address appellant's third assignment of error first because we find it dispositive of the instant appeal.

## II. Law and Analysis

{¶ 11} In appellant's third assignment of error, he argues that the trial court erred in admitting the victim's statements in the 911 call and in the body camera video. Appellant argues that the victim's statements were inadmissible hearsay.

{¶ 12} In the instant case, the city presented W.V. as the only witness at trial. At the beginning of W.V.'s direct testimony, the prosecutor asked W.V. various preliminary questions to which W.V. testified that she was engaged to appellant and had been living with him for over a year. The prosecutor then asked W.V. "[d]o you remember calling 911 [on July 12, 2018]?" W.V. responded "[y]eah." (Tr. 47.) The prosecutor then sought to play the 911 tape and the following exchange occurred:

[PROSECUTOR]: Okay. For the record, [city's] [e]xhibit [t]wo.

THE COURT: Okay.

[APPELLANT'S COUNSEL]: Your [h]onor, I would object to the playing of this 911 tape. Your [h]onor, first of all and I'd imagine that they would try to get it in under some sort of excited utterance. [W.V.] specifically stated on the tape that the — that [appellant] had left the scene; there was no continuing emergency.

Additionally your [h]onor, we believe that once [W.V.] testifies, this would act to kind of impeach her testimony based on her prior inconsistent statement which my colleague can't do because he called [W.V.] to the stand. So your [h]onor we would ask that the tape not be played.

THE COURT: All right.

[PROSECUTOR]:  Well, your [h]onor, the victim's testifying I think it's making an argument about confrontation.  It's a 911 call made by the victim on the date of the incident.

THE COURT:  All right.  You can play the tape.  Motion to not play the tape is denied.

(Tr. 47-48.)  The tape was then played in open court.  The prosecutor then asked

W.V. the following questions while playing the 911 tape:

[PROSECUTOR]:  Do you recognize your voice on the 911 call?

THE COURT:  Is that your voice, ma'am?

[W.V.]:  Yeah.

[PROSECUTOR]:  Okay.  So far as you can hear, is that a true and accurate reflection of the 911 call that you made that day?

[W.V.]:  Yes.

(Tr. 49.)

{¶ 13} Later on in W.V.'s testimony, the prosecutor sought to play the police

officer's body camera and appellant's counsel renewed his objection.

[PROSECUTOR]:  And did the police respond to the residence?

[W.V.]:  Yes.

[PROSECUTOR]:  Okay.  Do you remember them talking to you?

[W.V.]:  Vaguely; I don't know.

[PROSECUTOR]:  If I showed you footage of them talking to you, would that kind of help you out?  Would you be able to recognize it?

[W.V.]:  I mean they were asking me if I was staying there.

[PROSECUTOR]:  Okay.

[W.V.]:  Or if I was moving — leaving the premises.

[PROSECUTOR]:  Okay.

[PROSECUTOR]:  I'll play [p]laintiff's [e]xhibit two, your [h]onor.

[APPELLANT'S COUNSEL]:  Same objection, your [h]onor.

THE COURT:  So noted.

[APPELLANT'S COUNSEL]:  Trying to let this evidence serve against her testimony.

THE COURT:  Okay overruled.

The prosecutor then played a body camera video of one of the police officers who responded to the scene on July 12, 2018.  The prosecutor then asked W.V. the following questions:

[PROSECUTOR]:  For the record [W.V.], do you recognize yourself in the body camera?

[W.V.]:  Yeah.

[PROSECUTOR]:  Does it truly and accurately reflect from what you remember from that day when the police responded?  "Yes" or "no."

[W.V.]:  Yes.

(Tr. 54-55.)

{¶ 14} At trial, appellant's counsel objected to the playing of the 911 call and the body camera video based upon hearsay and improper impeachment grounds. However, now on appeal, appellant argues that the 911 tape and body camera video were not properly authenticated because neither the police officer nor the 911 operator testified at trial.

{¶ 15} In our review of the record, we note that appellant did not object on authentication grounds at trial.  An appellant cannot present arguments for the first

time on appeal, therefore, we find that appellant has waived any argument related to the 911 call or body camera video authentication. *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 2011-Ohio-1922, 952 N.E.2d 1181, ¶ 23-26 (8th Dist.). Notwithstanding the fact that appellant has waived any argument related to authentication, we find that the prosecutor properly authenticated the 911 call and the body camera video.

## A. Authentication

{¶ 16} Pursuant to Evid.R. 901(A), a party must establish the authentication or identification of evidence prior to that evidence being admissible. Evid.R. 901(A) provides in pertinent part, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

> By way of illustration, Evid.R. 901(B) provides that evidence may be properly authenticated by "testimony of witness with knowledge" that "a matter is what it is claimed to be." Further, the authentication requirement of Evid.R. 901(A) is a low threshold that does not require conclusive proof of authenticity, but only sufficient foundation evidence for the trier of fact to conclude that the evidence is what its proponent claims it to be. *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 21, citing *Yasinow v. Yasinow*, 8th Dist. Cuyahoga No. 86467, 2006-Ohio-1355, ¶ 81.

*State v. Maust*, 8th Dist. Cuyahoga No. 103182, 2016-Ohio-3171, ¶ 24. This court reviews a trial court's ruling on the adequacy of authentication for an abuse of discretion. *State v. Bowling*, 8th Dist. Cuyahoga No. 93052, 2010-Ohio-3595, ¶ 33, citing *State v. Easter*, 75 Ohio App.3d 22, 26-27, 598 N.E.2d 845 (4th Dist.1991).

{¶ 17} Considering the low threshold of authentication, we find that W.V.'s testimony properly authenticated the 911 tape and the body camera video. W.V. had knowledge that the 911 tape and the body camera video were what each recording claimed to be. In addition, W.V. testified and affirmed that both the 911 tape and the body camera video introduced were an accurate representation of what happened on that particular day. Accordingly, we find the city satisfied Evid.R. 901(A), and we find no merit to appellant's argument that the city failed to properly authenticate the 911 tape and the body camera video.

## B. Admissibility

{¶ 18} Having found that the city properly authenticated the 911 tape and the body camera video, we turn next to whether or not the 911 tape and body camera video were properly admitted as evidence. At trial, appellant objected to the playing of the 911 tape and body camera video, and argued W.V.'s statements within the recordings would be inadmissible hearsay statements and improper impeachment testimony.

{¶ 19} The admission of evidence is within the trial court's sound discretion. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). A trial court will have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Taylor*, 8th Dist. Cuyahoga No. 98107, 2012-Ohio-5421, ¶ 22, citing *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 16-18 (2d Dist.). In addition, the trial court's abuse of its discretion must have materially prejudiced the defendant. *State v. Lowe*, 69 Ohio

St.3d 527, 532, 634 N.E.2d 616 (1994), citing *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

{¶ 20} In the instant case, prior to playing the 911 tape or the body camera video, W.V. did not testify as to any events regarding the July 12, 2018 incident as it pertained to the charges of domestic violence and unlawful restraint. The prosecutor simply asked W.V. if she called 911 on the night in question, to which W.V. responded that she did. Then, the prosecutor played the 911 call for the trial court. The prosecutor then confronted W.V. with various photos of her lip and leg. These photos were taken by responding officers. Then the prosecutor asked W.V. if the police responded to her house on July 12, 2018, and if she remembered speaking to the officers. W.V. stated that police responded to her home and that she "vaguely" remembered speaking with officers. Then the prosecutor played the body camera video for the trial court.

{¶ 21} However, at no point did the prosecutor ask W.V. what happened the night of July 12, 2018, as it pertained to the charges of domestic violence and unlawful restraint. The only question posed to W.V. by the prosecutor regarding the domestic violence or unlawful restraint charges was the following exchange:

[PROSECUTOR]: Okay. But how did you get your injuries?

[W.V.]: I went to stand up on the bed and probably trying to crack him with the [video game controller] and then I fell. I don't remember.

(Tr. 58-59.)

{¶ 22} In appellant's third assignment of error, he argues that the trial court erred in admitting W.V.'s statements within the 911 call and the body camera video

because her statements were inadmissible hearsay. Furthermore, and although offered within appellant's first assignment of error, appellant also argues that W.V.'s statements were not properly admitted as prior inconsistent statements.

{¶ 23} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Pursuant to Evid.R. 802, hearsay is inadmissible unless it falls within an exception provided by the rules of evidence. *State v. Wright*, 8th Dist. Cuyahoga No. 100803, 2014-Ohio-5424.

{¶ 24} The city argues that W.V.'s statements in the 911 call and the body camera video were nonetheless admissible under the excited utterance and present sense impression exceptions. Pursuant to Evid.R. 803(1), a present sense impression is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Pursuant to Evid.R. 803(2), an excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

{¶ 25} The city argues that W.V.'s statements fall under the present sense impression exception. More specifically, the city argues that W.V. "volunteered the statements recorded on the body camera videos as she relived the event in her mind, in close proximity to when the event actually occurred."

{¶ 26} In support of its argument in this regard, the city directs this court's attention to *State v. Jordan*, 8th Dist. Cuyahoga No. 70783, 1997 Ohio App. LEXIS 5107 (Nov. 13, 1997), and *State v. Essa*, 149 Ohio App.3d 208, 2011-Ohio-2513, 955 N.E.2d 429 (8th Dist.). In *Jordan*, this court noted that a child's statement qualified as a present sense impression because the statement was spontaneous and unsolicited. *Jordan* at 16. The child stated to various witnesses that he had previously observed Jordan place tape over the baby victim's mouth to stop the baby from crying. The child did not testify at trial. This court found that the child's statement qualified as a present sense impression because the child uttered the statement to various witnesses in conjunction with the child's realization that the baby had stopped breathing. *Id.*

{¶ 27} In *Essa*, this court found that a murder victim's statement to her friend just moments before the victim's death qualified as a present sense impression. At trial, the friend testified that she spoke to the victim on the phone, and the victim indicated that she believed a pill given to her by Essa was causing her present nausea symptoms. *Essa* at ¶ 127. This court noted that the victim personally observed Essa give her a pill, then personally experienced nausea, all of which she recounted to her friend as it was happening in real time. *Id.*

{¶ 28} We find that the instant case is distinguishable from *Jordan* and *Essa*. First, the city does not present any actual statements W.V. made either in the 911 call or the body camera video that W.V. had previously made when she was observing the alleged assault. However, in our review of both the 911 call and the

body camera video, W.V. does not provide any of her own statements that she had previously made when she was observing the alleged assault. In the 911 call and the body camera video, W.V. was simply describing to the 911 operator and to the responding officers what events she had previously observed. In this way, within the 911 call and body camera video, W.V. does not provide a statement that described or explained an event or condition made while she was perceiving the event or condition. As such, we find that W.V.'s statements made within the 911 call and body camera video do not fall under the present sense impression exception.

{¶ 29} W.V.'s statements within the 911 call and body camera video also do not qualify under the excited utterance exception. A statement may be found to fall under the excited utterance exception even if that statement is not made contemporaneously with the startling event. *State v. Shutes*, 8th Dist. Cuyahoga No. 105694, 2018-Ohio-2188, ¶ 37, citing *State v. Duncan*, 53 Ohio St.2d 215, 219, 373 N.E.2d 1234 (1978). Indeed, "[t]here is no per se length of time after which a statement may no longer be considered to be an excited utterance." *Id.*, citing *State v. Taylor*, 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993). The essential components of an excited utterance is that "the statement must be made while the declarant is under the stress of the event, and the statement may not be a result of reflective thought." *Id.*, citing *Taylor* at 303.

{¶ 30} In the 911 call, W.V. states that appellant had left the residence and that the alleged assault had occurred an hour before she called 911. In the 911 call, W.V.'s tone appears calm and collected. Further, there is nothing within the record

to suggest that W.V. is under the stress of excitement cause by the alleged assault. Based on these facts, we find that W.V.'s statements within the 911 call are the result of reflective thought and do not qualify as excited utterances.

{¶ 31} Likewise, in the body camera video, it is also clear that W.V. is not under the stress of excitement caused by the alleged assault. As best we can determine from the record, responding officers arrived at appellant's home a few hours after W.V. made the 911 call. There is nothing to suggest that W.V. was at all under the stress of excitement of the alleged assault when she was speaking to the responding officers. The city did not present any other witnesses, namely the responding police officers, to suggest that W.V. appeared to be under the stress of excitement of the alleged assault. As such, we also find that W.V.'s statements on the body camera video are the result of further reflective thought and do not qualify as excited utterances.

{¶ 32} To the extent that appellant also argues that the prosecutor did not properly impeach W.V., we agree. Pursuant to Evid.R. 607, "[t]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."

{¶ 33} We note that the city did not call W.V. as a hostile witness pursuant to Evid.R. 611. "Evid.R. 611 allows a party to call a hostile witness, an adverse party, or a witness identified with an adverse party and examine the witness with the use of leading questions on direct examination." *In re K.S.*, 8th Dist. Cuyahoga No. 97343,

2012-Ohio-2388, ¶ 16.  We further note that the trial court, either at the city's or appellant's counsel's suggestion, did not call W.V. as a court witness as permitted by Evid.R. 614.

{¶ 34} Although a party may attack the credibility of a witness by means of a prior inconsistent statement pursuant to Evid.R. 607, there must be a statement made at trial in which to attack.  In this regard, a witness must first testify to a matter, and then if a witness did not testify accordingly or as anticipated, counsel may then attempt to impeach a witness with a prior inconsistent statement.  Applying this standard to the testimony in the instant case, at the point in time in which the prosecutor played the 911 tape and the body camera video, W.V. had not testified as to the events surrounding the alleged assault.  Therefore, there existed no testimony from W.V. regarding the incident with which the prosecutor could have attempted to impeach W.V.  As such, the 911 call and the body camera video were not proper impeachment evidence pursuant to Evid.R. 607.

{¶ 35} Furthermore, because W.V. was the city's witness, the city was required to show surprise and affirmative damage in order to impeach W.V. with a prior inconsistent statement under Evid.R. 607.  Had the prosecutor asked W.V. about the incident, and had W.V. in some way denied any wrongdoing by appellant, then the prosecutor could have attempted to impeach W.V. with a prior inconsistent statement if the prosecutor was able to show surprise and affirmative damage.

{¶ 36} Based upon our analysis in this regard, the trial court abused its discretion in admitting W.V.'s statements in the 911 tape and the body camera video

because these statements do not fall under the present sense impression or excited utterance exceptions, and were not properly admitted as prior inconsistent statements.

{¶ 37} We appreciate that this matter was tried to the bench, and therefore we presume, unless affirmatively shown otherwise, that the court only considered all the testimony for proper purposes. *State v. Wingfield*, 8th Dist. Cuyahoga No. 107196, 2019-Ohio-1644, ¶ 38, citing *State v. Colegrove*, 8th Dist. Cuyahoga No. 102173, 2015-Ohio-3476, ¶ 22. However, the procedure in which the evidence was presented compels us to find that W.V.'s statements were not admissible under a hearsay exception. As such, we are also compelled based on the record before us to find that the trial court abused its discretion in admitting the 911 call and the body camera video as evidence.

{¶ 38} Accordingly, appellant's third assignment of error is sustained.

{¶ 39} Because appellant's third assignment of error is sustained and is dispositive of the instant appeal, we decline to address appellant's first and second assignments of error.

{¶ 40} Judgment vacated. Matter remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

RAYMOND C. HEADEN, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY