[Cite as *State v. Toudle*, 2013-Ohio-1548.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98609**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JEANNINE TOUDLE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-558515

**BEFORE:** Keough, P.J., E.A. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 18, 2013

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street
Second Floor
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Marcus A. Henry
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, Jeannine Toudle, appeals from the trial court's judgment, rendered after a jury trial, finding her guilty of two counts of deception to obtain a dangerous drug and sentencing her to twelve months incarceration. Finding no merit to the appeal, we affirm.

## I. Background

{¶2} In August 2011, Toudle was indicted in CR-552119 on five counts of deception to obtain a dangerous drug and one count of drug trafficking. The State subsequently dismissed the charges without prejudice.

{¶3} In January 2012, the State re-indicted Toudle in CR-558515 on four counts of deception to obtain a dangerous drug in violation of R.C. 2925.22(A). All of the counts involved prescriptions for Percocet. Count 1 charged that on July 2, 2010, Toudle obtained a prescription by deception from a Dr. Monet; Count 2 charged that on February 16, 2011, Toudle deceived Dr. Laura Dollison to obtain a prescription; Count 3 charged that on May 24, 2011, Toudle obtained a prescription by deception from Dr. Dwight Carson; and Count 4 charged that on June 16, 2011, Toudle obtained a prescription by deception from Dr. Radah Baishnab.

{¶4} At trial, Detective Bradley Schultz testified that the charges stemmed from an anonymous tip to the Westshore Enforcement Bureau, a narcotics investigation task

force, that Toudle was "doctor-shopping." Det. Schultz testified that upon receiving the tip, he printed an OARRS report on Toudle.[1] Det. Schultz explained that when an individual fills a prescription for a controlled substance, pharmacies are required to report information about the prescription to the state pharmacy board. Doctors, pharmacists, and law enforcement personnel can access the database and print OARRS reports regarding an individual's prescription records.

{¶5} Det. Schultz said that when he obtained the OARRS report, he discovered that Toudle had four alleged violations, meaning that on four occasions she had obtained and filled a second prescription before the days remaining on the first prescription had expired. Referring to State's Exhibit No. 4, which Det. Schultz said was a synopsis of the OARRS report that he prepared for the grand jury, Det. Schultz testified that the violations occurred (1) in July of 2010, when Toudle saw a Dr. Monet and obtained a prescription for 15 Percocet pills; (2) in February 2011, when Toudle obtained a prescription for 20 Percocet pills from Dr. Laura Dollison; (3) on May 24, 2011, when Toudle saw Dr. Dwight Carson and received a prescription for 120 Percocet pills; and (4) on June 16, 2011, when Toudle saw Dr. Radah Baishnab and obtained a prescription for 120 Percocet pills.

{¶6} Dr. Carson testified that he is a physician with the Westshore Family Practice and that Toudle came to see him regarding neck and back pain. Dr. Carson said that on May 24, 2011, he wrote Toudle a prescription for 120 Percocet pills, a one-month

---

[1] OARRS is an acronym for Ohio Automated Rx Reporting System.

supply.   When he asked Toudle about her other medications, Toudle told him that another doctor had previously prescribed Percocet for her.   Dr. Carson testified that he was not sure if he saw an OARRS report for Toudle on May 24, 2011, but said he had seen Toudle for several months before he wrote the May 24, 2011 prescription, was aware she had seen other doctors in the Westshore Family Practice, and was aware of the prescriptions they had written for Toudle.

{¶7}   Dr. Carson testified that he was familiar with OARRS, knew how to read an OARRS report, and occasionally used the reports in his practice.   He identified State's Exhibit No. 5 as an OARRS report for Toudle.   Testifying from the report, Dr. Carson reviewed Toudle's prescriptions for Percocet.   He stated that he prescribed a one-month supply of Percocet to Toudle on January 17, 2011, and again on February 14, 2011.   He said that on February 16, 2011, Toudle received a prescription for 20 Percocet pills from Dr. Dollison.   He testified further that on March 8, 2011, April 5, 2011, and May 5, 2011, Dr. Talbot, a doctor in the Westshore Family Practice, wrote Toudle one-month prescriptions, and that on May 24, 2011, he wrote a one-month prescription for Toudle. Dr. Carson testified that the OARRS report also reflected that a doctor who was not part of Westshore Family Practice prescribed 20 Percocet pills for Toudle on May 25, 2011.

{¶8}   Dr. Dollison, an emergency room doctor at Lakewood Hospital, testified about the prescription for 20 Percocet pills that she wrote for Toudle on February 16, 2011.   Dr. Dollison said that Toudle arrived at Lakewood Hospital by ambulance at approximately 1 a.m. that day complaining of incisional pain related to a biopsy the day

before. Dr. Dollison testified that the medical records from Toudle's emergency room visit reflected that Toudle told her that she was taking Xanax, Keflex, an unnamed muscle relaxant, and Percocet. Dr. Dollison testified that she gave Toudle one Percocet pill while she was in the Emergency Room, and wrote a prescription for 20 pills. Dr. Dollison said that she could not recall if her note "Percocet upon discharge; not enough" meant that the Percocet Toudle was taking was not enough for the pain she was experiencing or if it meant that Toudle was running out of her Percocet pills. Dr. Dollison testified that Toudle did not tell her that another doctor (i.e., Dr. Carson) had prescribed 90 Percocet pills for her on February 14, 2011, two days prior to her Emergency Room visit, and that she would not have prescribed more Percocet for Toudle if she had known of the other prescription.

{¶9} Dr. Baishnab testified that he is a doctor in the Westshore Family Practice and saw Toudle on June 16, 2011, when he wrote her a prescription for Percocet. According to Dr. Baishnab, Toudle did not tell him that Dr. Carson had prescribed Percocet for her on May 24, 2011, and if he had known about that prescription, he would not have written another prescription for Toudle.

{¶10} State's Exhibit Nos. 1, 2, and 3 (the prescriptions written by Dr. Dollison on February 16, 2011, Dr. Carson on May 24, 2011, and Dr. Baishnab on June 16, 2011), Exhibit No. 7 (Toudle's medical records from her February 16, 2011 visit to Lakewood Hospital Emergency Room), and Exhibit No. 8 (Dr. Baishnab's notes regarding Toudle's June 16, 2011 office visit) were admitted into evidence. The State then dismissed Count

1 (relating to the prescription written by Dr. Monet). After the trial court denied Toudle's Crim.R. 29 motion for acquittal, the jury found her guilty of Counts 2 and 4 (the counts relating to Dr. Dollison and Dr. Baishnab) but not guilty of Count 3 (relating to Dr. Carson). The trial court sentenced Toudle to 12 months incarceration on each count, to be served concurrently.

## II. Law and Analysis

### A. Admissibility of Testimony About the OARRS Report

{¶11} In her third assignment of error, Toudle contends that the trial court erred in allowing Det. Schultz and Dr. Carson to testify about information contained in the OARRS report. We address this assignment of error first because it is relevant to Toudle's first assignment of error regarding whether there was sufficient evidence to support her convictions.

{¶12} Evidentiary rulings lie within the broad discretion of the trial court and will form the basis for reversal on appeal only upon an abuse of discretion that amounts to prejudicial error. *State v. Graham*, 58 Ohio St.2d 350, 352, 390 N.E.2d 805 (1979). The record demonstrates that defense counsel did not object to either Det. Schultz's or Dr. Carson's testimony.[2] Accordingly, we address Toudle's assignment of error under the plain error standard. *State v. Williams*, 51 Ohio St.3d 112, 364 N.E.2d 1364 (1977) (a

---

[2]Despite Toudle's assertion that defense counsel objected to Dr. Carson's testimony about the OARRS report, the record demonstrates that counsel never objected. She merely confirmed with Dr. Carson that he had offered testimony about the contents of the report even though it was not prepared by him.

failure to object at trial constitutes a waiver of all but plain error on the issues on appeal).

Under Crim.R. 52(B), plain errors affecting substantial rights may be noticed by an appellate court even though they were not brought to the attention of the trial court. To constitute plain error, there must be an error that is plain or obvious that affected the outcome of the case. *In Re: J.G.*, 8th Dist. No. 98625, 2013-Ohio-583, ¶ 10, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Courts are to notice plain error under Crim.R. 52(B) "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*

{¶13} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is inadmisible into evidence except under specifically delineated circumstances. Evid.R. 802.

{¶14} One such exception, commonly referred to as the "business records exception," is contained in Evid.R. 803(6), which states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances or preparation indicate lack of trustworthiness.

**{¶15}** Thus, to qualify under the Evid.R. 803(6) business record exception, (1) the record at issue must be one regularly recorded in a regularly conducted activity; (2) a person with knowledge of the act, event, or condition recorded must have made the record at issue; (3) the person who made the record must have done so at or near the time of the event recorded; and (4) the party who seeks to introduce the record must lay a foundation through testimony of the record custodian or some other qualified witness. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 808 N.E.2d 31, ¶ 170, citing Weissenberger, *Ohio Evidence Treatise* 600, Section 803.73 (2007).

**{¶16}** Toudle contends that Det. Schultz and Dr. Carson's testimony about the OARRS report violated Evid.R. 803(6) because the report was not authenticated and neither individual authored the report.[3]

**{¶17}** We agree with Toudle that the report and testimony about the contents of the report were not admissible under Evid.R. 803(6) because neither Det. Schultz nor Dr. Carson authored the report nor compiled the data for the report. In fact, Det. Schultz testified that the data in the state pharmacy database from which the report is generated comes from numerous pharmacies across the state that send information to the pharmacy board, which then compiles the data for the reports.

**{¶18}** However, the report was admissible under Evid.R. 803(8), which states:

---

[3]The OARRS report was not admitted into evidence; Toudle's objections relate to witness testimony about the contents of the report.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

Records, *reports*, statements, *or data compilations, in any form*, of public offices or agencies, *setting forth* (a) the activities of the office or agency, or (b) *matters observed pursuant to duty imposed by law as to which matters there was a duty to report*, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness. (Emphasis added.)

**{¶19}** Evid.R. 803(8) is commonly known as the "public records exception" to the hearsay rule. Thus, at first blush, it would appear that Evid.R. 803(8) is not applicable to the OARRS report because R.C. 4729.80(C) specifically provides that "[i]nformation contained in the database and any information obtained from it is not a public record." However, as the Twelfth District has noted, a more accurate name for Evid.R. 803(8) is the "official records exception":

[T]he term, "public records" in the title of Evid.R. 803(8) is a misnomer. Weissenberger's Ohio Evidence Treatise (2006 Ed.) 531, Section 803.102. A more accurate term for what the rule means is "official records," which Weissenberger defines as records "made or done by an officer of the government," not necessarily "capable of being known or observed by all."

*State v. McClain*, 12th Dist. No. CA2005-09-102, 2006-Ohio-6708, fn. 2.

[F]or a document to be admissible under Evid.R. 803(8)(b), the observations of the reporter must occur pursuant to a legally imposed duty and the matters observed must be the subject of a duty to report. Moreover, the observations must be either the firsthand observations of the official making the report or of one with a duty to report to a public official.

*Cincinnati Ins. Co. v. Volkswagen of Am., Inc.*, 41 Ohio App.3d 239, 242, 535 N.E.2d 702

(10th Dist.1987)

{¶20} Here, as authorized by law, the state pharmacy board maintains a drug database to monitor misuse and diversion of controlled substances. R.C. 4729.75. It compiles the database from information submitted by Ohio pharmacies, which are required by law to submit to the board information regarding the prescriptions they have filled for inclusion in the database. R.C. 4729.77. Accordingly, we find that an OARRS report is an official record of the state pharmacy board and is admissible under Evid.R. 803(8).

{¶21} We also find that the report was properly authenticated. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The authentication requirement of Evid.R. 901(A) is a low threshold that does not require conclusive proof of authenticity, but only sufficient foundation evidence for the trier of fact to conclude that the document is what its proponent claims it to be. *Yasinow v. Yasinow*, 8th Dist. No. 86467, 2006-Ohio-1355, ¶ 81, citing *State v. Easter*, 75 Ohio App.3d 22, 598 N.E.2d 845 (4th Dist.1991); Evid.R. 901(B)(1).

{¶22} Det. Schultz testified regarding what data from their filled prescriptions the pharmacies must send to the pharmacy board and how the data in the OARRS database is compiled. He further testified that he routinely runs OARRS reports in the course of his investigations and that he ran an OARRS report on Toudle after he received the anonymous tip. Dr. Carson testified that he is familiar with OARRS reports and

sometimes uses them in his practice, and he identified State's Exhibit No. 5 as the OARRS report for Toudle. In light of this testimony, we find that the report was properly authenticated.

{¶23} Accordingly, the report was admissible under the official records exception set forth in Evid.R. 803(8) and therefore, the trial court did not commit plain error in allowing Det. Schultz and Dr. Carson to testify about the contents of the report. The third assignment of error is therefore overruled.

B.     Sufficiency and Manifest Weight of the Evidence

{¶24} In her first assignment of error, Toudle argues that there was insufficient evidence to support her convictions. In her second assignment of error, she contends that her convictions were against the manifest weight of the evidence.

{¶25} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a resonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶26}** "A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion." *State v. Ponce*, 8th Dist. No. 91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The manifest-weight-of-the-evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 515 N.E.2d 1009 (9th Dist.1986), paragraph one of the syllabus. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*, *supra.*

**{¶27}** Toudle was convicted of two counts of deception to obtain a dangerous drug in violation of R.C. 2925.22(A), which provides, in relevant part, that "[n]o person shall knowingly, by deception, procure the administration of a prescription for * * * a dangerous drug * * *." A "dangerous drug" is one that may be dispensed only upon prescription. R.C. 4729.01 and 3719.01. "Deception" means "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another * * *." R.C. 2913.01(A). "A person acts knowingly * * * when he is aware that his conduct will probably cause a certain result * * *." R.C. 2901.22(B).

**{¶28}** Toudle argues that the evidence was insufficient to demonstrate that she deceived Dr. Dollison to obtain the Percocet prescription on February 16, 2011, because the medical records reflect that she told Dr. Dollison that she had received Percocet after the biopsy the day before but Dr. Dollison did not ask her how many pills she had been given. She argues that Dr. Dollison's failure to question her in more detail, check her medical records, or call her other doctors to ensure that her request for more medication complied with medical standards does not mean that she deceived Dr. Dollison to obtain the prescription. According to Toudle, any error was with Dr. Dollison, not her. We disagree.

**{¶29}** The medical records from Toudle's visit to the Lakewood Hospital Emergency Room on February 16, 2011, indicate that Toudle did, in fact, tell the medical personnel that she was taking Percocet. But according to Dr. Dollison, Toudle only told her that she had received Percocet after her biopsy the day before her visit to the emergency room and that it was "not enough"; she never told her that she had received a prescription for 90 Percocet pills only two days before her visit to the emergency room. Construing this evidence in a light most favorable to the prosecution, we find that Dr. Dollison's testimony was sufficient to establish that Toudle withheld information from her about the prescription for Percocet that she obtained from Dr. Carson on February 14, 2011, in order to obtain another prescription.

**{¶30}** Likewise, Toudle's conviction for obtaining a prescription from Dr. Dollison by deception is not against the manifest weight of the evidence. Although

Toudle contends that Dr. Dollison was not a credible or reliable witness, the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact may "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St.61, 67, 197 N.E.2d 548 (1964). "The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986).

{¶31} We find nothing in Dr. Dollison's testimony to indicate that she was not reliable or credible. Accordingly, the trier of fact did not lose its way nor create a manifest miscarriage of justice in convicting Toudle of deceiving Dr. Dollison on February 16, 2011, to obtain a prescription for 20 Percocet pills.

{¶32} Toudle also contends that the evidence was insufficient to establish that she deceived Dr. Baishnab on June 16, 2011 to obtain a prescription for Percocet. According to Toudle, she returned to the same medical practice that had prescribed Percocet for her on May 24, 2011, and told Dr. Baishnab that she wanted her "past" medicine. Therefore, she contends that Dr. Baishnab should have checked her medical chart or an OARRS report, or conferred with Dr. Carson before giving her another prescription. Toudle contends that Dr. Baishnab's failure to do so does not indicate that she deceived him to obtain another prescription.

**{¶33}** Dr. Baishnab testified that he wrote the prescription because Toudle told him that she had "run out" of her Percocet and needed more. But according to Dr. Baishnab, if Toudle was taking the Percocet as Dr. Carson had prescribed on May 24, 2011 (4 times a day), she would have still had 48 pills left when she saw him on June 16, 2011. He testified further that the medical records from her visit with him indicate that Toudle was in the hospital from June 10, 2011 through June 13, 2011. Dr. Baishnab testified that the hospital would have provided Toudle with Percocet pills on those four days, so she should have had an extra 16 pills. Thus, according to Dr. Baishnab, as of June 16, 2011, when she asked for another prescription, Toudle should have still had 64 pills remaining from her May 24, 2011 prescription.

**{¶34}** In light of this testimony, we find that there was sufficient evidence to establish that Toudle knowingly deceived Dr. Baishnab to procure a prescription for Percocet. Although we agree with Toudle that Dr. Baishnab should have been more diligent in checking her prior records before refilling her prescription, the evidence is sufficient to establish that she gave him false information in order to procure another Percocet prescription before the prior prescription had expired.

**{¶35}** Further, we find nothing in the record to support Toudle's assertion that her conviction was against the manifest weight of the evidence because Dr. Baishnab was not a reliable or credible witness. Accordingly, we find that the jury did not lose its way in convicting Toudle of obtaining a prescription from Dr. Baishnab by deception.

**{¶36}** The first and second assignments of error are therefore overruled. C. Ineffective Assistance of Counsel

**{¶37}** In her fourth assignment of error, Toudle contends that she was denied her constitutional right to effective counsel because counsel did not object to Det. Schultz and Dr. Carson's testimony about the OARRS report, thus allowing inadmissible hearsay to be admitted at trial.

**{¶38}** In light of our resolution of the third assignment of error, this assignment of error has no merit and is overruled.

**{¶39}** Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS (SEE ATTACHED DISSENTING OPINION.)

EILEEN A. GALLAGHER, J., DISSENTING:

**{¶40}** For the following reasons, I respectfully dissent from the majority opinion. Because I find that the state failed to present sufficient evidence concerning the key element of deception, I would vacate the convictions and sentence.

**{¶41}** As stated by the majority opinion, "deception" means "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act or omission that creates, confirms, or perpetuates a false impression in another * * *." R.C. 2913.01(A). "A person acts knowingly * * * when he is aware that his conduct will probably cause a certain result * * *." R.C. 2901.22(B).

**{¶42}** The jury convicted Toudle of two counts of deception to obtain a dangerous drug in violation of R.C. 2925.22(A) for her conduct on February 16, 2011, with Dr. Dollison and on June 16, 2011, with Dr. Baishnab. I address each instance separately.

**{¶43}** On February 16, 2011, Dr. Dollison treated Toudle in the Lakewood Hospital Emergency Department. Dr. Dollison testified that she did not remember treating Toudle and testified solely from her notes and medical records of the February 16 visit. Dr. Dollison admitted that during her visit, Toudle did report to medical personnel

that she was taking Percocet. Specifically, Dr. Dollison testified that Toudle told her that she had received Percocet after her biopsy the day before her visit to the emergency room and that it was "not enough." Dr. Dollison could not remember whether her note "not enough" meant it was not enough for the pain, or whether the pills she received were running out. In lieu of additional questions to Toudle about her pain and the prescription for Percocet she received days prior, Dr. Dollison prescribed Toudle 20 additional pills of Percocet and discharged her from the emergency room. Dr. Dollison testified that had she known that Toudle received a prescription for 90 Percocet pills two days before her February 16, 2011 visit, she would not have prescribed the additional 20 Percocet pills.

{¶44} However, unlike the majority, I find that Toudle did not deceive Dr. Dollison to obtain the February 16, 2011 prescription. If anything, I find error with Dr. Dollison's failure to further question Toudle regarding her level of pain and her prescription history. Toudle stated to medical personnel that she was taking Percocet to manage her pain from a recent biopsy. It was at that point that the duty to ask further questions fell to Dr. Dollison. Toudle, as a patient, is not required to know what to disclose to doctors during an emergency room visit. Dr. Dollison, as the emergency room physician, should have questioned Toudle further about her statement that the Percocet was "not enough." When a patient indicates that they are taking a medication, it is logical to conclude that it is then up to the medical professionals to further question the patient about the quantity of the medication and when it was received.

**{¶45}** Toudle disclosed to her treating physician that she was currently taking Percocet for her pain and that it was "not enough." She did not make any false or misleading statements to Dr. Dollison, she did not withhold information, she did not prevent Dr. Dollison from acquiring information, and she did not omit information upon questioning by Dr. Dollison. Dr. Dollison failed to question Toudle about her pain and her prescription history; this failure cannot be attributed to Toudle and then used to form the basis of a criminal charge.

**{¶46}** The same is true for Toudle's June 16, 2011 visit with Dr. Baishnab. On June 16, 2011, Toudle returned to the same medical practice that had prescribed Percocet for her on May 24, 2011. On June 16, 2011, Dr. Baishnab examined Toudle for the first time. During that visit, Toudle told Dr. Baishnab that she had continued back pain and that she needed a refill of her "past medicine." Dr. Baishnab admitted that even though it was his first visit with this patient, he did not review Toudle's complete chart prior to or during her visit, nor did he refer to the OARRS report. He stated that he based his decision to prescribe 120 units of Percocet solely on the patient history that Toudle provided. Additionally, Dr. Baishnab reported that he did not actually know whether Toudle had run out of her "past medicine" at the time of her visit or whether she was running out of her medicine. Dr. Baishnab reported it was common for patients to come in when their prescriptions were running out.

**{¶47}** Dr. Baishnab testified that if Toudle was taking Percocet as Dr. Carson had prescribed on May 24, 2011, she would have had Percocet pills left when she saw him on

June 16, 2011. It is this point that forms the basis of the state and the majority's conclusion that Toudle deceived Dr. Baishnab into writing the prescription for 120 Percocet on June 16, 2011.

{¶48} I find that Toudle did not deceive Dr. Baishnab during her June 16, 2011 doctor's visit. I find error with Dr. Baishnab's lack of diligence in questioning his patient. Unlike Toudle's visit with Dr. Dollison, Dr. Baishnab had Toudle's prescription and treatment history available through his medical practice. Additionally, Dr. Baishnab had the ability to check the OARRS report, something he testified that he does when he suspects that something is not right. Dr. Baishnab did not review the OARRS report prior to prescribing Toudle with 120 units of Percocet.

{¶49} Toudle simply disclosed to her treating physician that she was in pain and that she needed her "past medicine." As stated above, she did not make any false or misleading statements to Dr. Baishnab, she did not withhold information, she did not prevent Dr. Baishnab from acquiring information, and she did not omit information when questioned by Dr. Baishnab. Dr. Baishnab failed to review Toudle's medical history or question Toudle about her pain and her prescription history. This failure lies with Dr. Baishnab and cannot be used to form the basis of a criminal charge.

{¶50} I find the two incidents outlined above similar to the facts in *State v. Schaufele*, 9th Dist. No. 10CA0137-M, 2012-Ohio-642. In *Schaufele*, the court held that the state failed to present sufficient evidence of deception to obtain a dangerous drug by failing to show any act or omission amounting to deception. The court noted that while

deception included withholding information, the court found no evidence that Schaufele was faced with an opportunity to disclose information and decided not to do so. *Id.* Further, the court noted that although the state did present evidence that Schaufele knew that she was not to get Percocet from other doctors, that evidence, in and of itself, did not substantiate the state's assertion that she used deception to obtain a prescription. *Id.* The court concluded that the state failed to inform the trier of fact who, if anyone, Schaufele spoke to, and then deceived, to obtain the prescription. *Id.*

{¶51} Like *Schaufele*, the state has failed to present evidence that Toudle used deception to obtain prescriptions for Percocet. Toudle voluntarily disclosed to both Drs. Dollison and Baishnab that she was taking Percocet and, in both instances, the doctors failed to ask further questions. Toudle was never presented with the opportunity to disclose or withhold information. Both Drs. Dollison and Baishnab failed to ask any follow-up questions once Toudle disclosed that she was taking Percocet. I find this fault attributable to the medical professionals, not Toudle. I certainly do not find it to substantiate charges of deception to obtain dangerous drugs.

{¶52} For the reasons stated above, I find that the state failed to present sufficient evidence of deception and thus, I would vacate Toudle's convictions and sentence and remand for proceedings consistent with this dissent.