[Cite as *State v. Maust*, 2016-Ohio-3171.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 103182

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHRISTOPHER MAUST

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-592772-A

**BEFORE:** Boyle, J., Jones, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 26, 2016

**ATTORNEY FOR APPELLANT**

Mary Catherine O'Neill
50 Public Square
Suite 1900
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Jonathan Block
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

**{¶1}** Defendant-appellant, Christopher Maust, appeals his convictions for several drug-related offenses, raising the following four assignments of error:

> I. The trial court erred by admitting improper expert testimony in violation of the Ohio Rules of Evidence, the Ohio Rules of Criminal Procedure and supporting case law.
>
> II. The trial court erred in admitting improper physical evidence pursuant to Ohio Rules of Evidence and supporting case law.
>
> III. The guilty verdict cannot be upheld because evidence and testimony presented at trial did not establish appellant's guilty [sic] beyond a reasonable doubt.
>
> IV. Trial court provided ineffective assistance of counsel thereby violating appellant's right to counsel.

**{¶2}** Finding no merit to the appeal, we affirm.

**A.  Procedural History and Facts**

**{¶3}** On January 18, 2015, Robert Stuart contacted the Independence Police Department and filed a police report against his grandson, Maust, who was living at the residence on Kleber Court, which Robert owned and rented to his son Christopher Stuart (Maust's father).  Robert reported concerns of drug activity and mistreatment of his medically ill adult son.  Upon discovering that Maust had two active warrants for his arrest, Independence police officers went to the residence, where they were greeted and granted entry inside the home by Christopher Stuart, who directed them upstairs to Maust's bedroom.  After Maust complied with the officers' order to exit the room, the officers conducted a protective sweep of Maust's room, prompting them to immediately

exit the area and request further assistance by the Independence Fire Department. Based on their observations, the officers were concerned for their safety, believing that they may have encountered a clandestine methamphetamine lab.

{¶4} Independence Fire Department personnel, along with the Chagrin Southeast Hazardous Material Response Team personnel, responded to the scene. After it was determined that the environment was not hazardous, the evidence found in the room was photographed and collected. The police also recovered a ziploc baggie containing a white substance that was later determined to be 4.86 grams of methamphetamine. The day following the incident, Robert contacted the police and indicated that a plastic bottle was discovered in the snow outside of Maust's bedroom window. The police later obtained the bottle from the garage of the Kleber Court residence.

{¶5} Maust was subsequently arrested and indicted on the following five counts: illegal manufacture or cultivation of drugs, a violation of R.C. 2925.04(A); assembly or possession of chemicals used to manufacture controlled substance, a violation of R.C. 2925.041(A); trafficking, a violation of R.C. 2925.03(A)(2); drug possession, a violation of R.C. 2925.11(A); and possessing criminal tools, a violation of R.C. 2923.24(A). Maust pleaded not guilty to the charges and elected to have a bench trial.

{¶6} At trial, the state presented six witnesses, including the director of the Chagrin Southeast Hazardous Material Response Team, Mark Vedder, who is a hazardous materials specialist in the area of clandestine labs. Vedder testified that he responded to a request for assistance at the Kleber Court residence on January 18, 2005.

Vedder explained that, after conducting the necessary testing to determine if the environment was safe, he assisted the police in identifying what the "materials" were and photographed the items. The state offered 49 photographs taken by Vedder, who identified each photograph and explained whether or how each item was relevant to the production of methamphetamine.

{¶7} The state additionally offered two photographs of the same item, marked as exhibit Nos. 60 and 61, which depicted the plastic bottle recovered by Robert the day following Maust's arrest. Vedder testified that he took these photographs at the Independence Fire Department on January 19, 2015, after the police had retrieved the bottle from the Kleber Court residence and transferred it to the fire department. Vedder further testified that the container identified in state's exhibit Nos. 60 and 61 is "very typical * * * in the production of methamphetamine in what's called the one-pot method" as indicated by "the container, the white residue that remains in the container, and the small amounts of spent lithium that are inside of that container."

{¶8} The state also offered testimony and a report concerning purchases of ephedrine and pseudoepedrine made by Maust using any alias. Independence Police Officer Shane Bates testified that, based upon the OARRS report obtained, Maust purchased a "significant amount" of these substances (89.5 grams) from various pharmacies in the area during the last two years.

{¶9} The state presented expert testimony from Jared Prill, a special agent with the Ohio Bureau of Criminal Investigation and assigned to the Northeast Clandestine

Drug Lab Unit. Special Agent Prill testified that he reviewed the evidence collected from the Kleber Court residence, including the photographs taken, and the police reports, including the report of Maust's consistent purchases of pseudephredrine every two to three weeks from March 2013 through December 2014.

{¶10} Prill explained the various manners of manufacturing methamphetamine and specifically detailed the "one-pot reaction process." Based on the evidence that he reviewed, Prill opined that Maust had been manufacturing methamphetamine utilizing this process. Prill further explained that the presence of the chemical components and other items necessary for the production of methamphetamine found in Maust's bedroom supported his conclusion. Specifically, Prill identified the following items as being significant: "Coleman fuel; salt; sodium hydroxide, which in this case was lye drain opener; methamphetamine paraphernalia; a bag of apparent completed methamphetamine; the ventilation fan inside of the bedroom; the burn patterns in the carpet; mason jars containing unknown liquids; the APR — the personal respirator device that is photographed and documented to be in the bedroom; the sulfuric acid; the instant cold packs; the packaging materials; the funnels; the coffee filters; the rubber tubing; the plastic baggies; [and] the coffee grinder containing white powder residue." Prill additionally testified that the plastic bottle depicted in the state's exhibit Nos. 60 and 61 is "a one-pot reaction vessel used in the manufacturing process." Prill further identified the lithium necessary for the production in methamphetamine by the one-pot reaction

process as being visible in the state's exhibit Nos. 60 and 61 as "the tiny flakes of gray metallic material inside the white residue" of the plastic bottle.

{¶11} Prill further explained that certain items — such as the drain cleaner, coffee filters, and Coleman fuel — were not stored in their generally accepted location, and that the close proximity of these items in the "same location" was significant and an indication of "being used in the methamphetamine process." Prill also noted that the surveillance system in the bedroom was also significant to him because it was being used to monitor only the bedroom. Prill explained that "a known documented side effect of methamphetamine is paranoia" and that "surveillance systems are very commonly associated and seen at lab sites."

{¶12} As for the other evidence presented at trial, we will discuss in greater detail as necessary in our disposition of the assignments of error.

{¶13} At the end of the state's case, Maust moved for an acquittal of all the charges under Crim.R. 29. The trial court granted Maust's motion in part with respect to the trafficking charge and the forfeiture specifications related to the money and cell phone but denied the motion as to all other charges. The defense rested and the trial court ultimately found Maust guilty on the remaining charges. At sentencing, the trial court imposed a total prison term of three years in prison. Specifically, the trial court merged Count 2 (illegal assembly or possession of chemicals used to manufacture a controlled substance) and Count 5 (possession of criminal tools) into Count 1 (illegal manufacture or cultivation of drugs) and imposed the mandatory term of three years in prison on Count

1.[1] The trial court further imposed a three-year prison term on Count 4 (drug possession) to run concurrently.

## B. Expert Testimony or Lay Opinion Testimony

**{¶14}** In his first assignment of error, Maust argues that the trial court abused its discretion in allowing Vedder to offer expert testimony as to the methamphetamine process, despite not having complied with Crim.R. 16(K) by providing an expert report prior to trial and not being qualified under Evid.R. 702.

**{¶15}** The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Taylor*, 8th Dist. Cuyahoga No. 98107, 2012-Ohio-5421, ¶ 22, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 16-18 (2d Dist.) citing *Black's Law Dictionary* 11 (8th Ed.Rev.2004). Further, this abuse of discretion must have materially prejudiced the defendant. *State v. Lowe*, 69 Ohio St.3d 527, 532, 634 N.E.2d 616 (1994), citing *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984).

**{¶16}** The state counters that Vedder was not offered as an expert witness; nor did his testimony constitute expert testimony. Instead, the state maintains that Vedder was a fact witness, who testified to his observations and actions, such as taking photographs,

---

[1] *See* R.C. 2925.04(C)(3) (when the offender has not previously been convicted under this statute, "the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree that is not less than three years").

and simply relayed the relevancy of his actions — all of which he was permitted to do under Evid.R. 701. We agree.

{¶17} Lay witness testimony is defined in Evid.R. 701 as:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶18} "Under Evid.R. 701, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702." *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 74, citing *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737 (2001). Indeed, this court has consistently recognized that the testimony of a state's witness, who is not presented as an expert, is properly admitted under Evid.R. 701 when (1) the testimony is based on the witness's training or experience, (2) the testimony relates to the witness's personal observations with the investigation, and (3) the testimony is helpful to determine a fact at issue. *See, e.g., State v. Wilkinson*, 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 52-53; *Primeau* at ¶ 75; *State v. Cooper*, 8th Dist. Cuyahoga No. 86437, 2006-Ohio-817, ¶ 18.

{¶19} Appellate courts have similarly determined that "some testimony offered by officers/detectives is lay person witness testimony even though it is based on the

officer/detective's specialized knowledge." *State v. Johnson*, 7th Dist. Jefferson No. 13JE5, 2014-Ohio-1226, ¶ 57 (Detective's testimony as to gang activity was permissible under Evid.R. 701 based on detective's personal knowledge and experience in the field.); *see also State v. McClain*, 6th Dist. Lucas No. L-10-1088, 2012-Ohio-5264, ¶ 13 (Detective's testimony that quantities of narcotics recovered during the execution of the search warrant suggested that they were for sale as opposed to personal use was admissible under Evid.R. 701 as lay person opinion testimony because his testimony was based on his training and experience.); *State v. Williams*, 9th Dist. Summit No. 25716, 2011-Ohio-6604, ¶ 11 (Officer's testimony that the location was a methamphetamine lab was proper Evid.R. 701 testimony because it was based on personal observation from items taken from garbage and found in the house.).

{¶20} Our review of the record reveals that the state properly laid a foundation for Vedder's testimony and that his testimony was directly related to the actions that he personally undertook at the scene. Specifically, Vedder — apart from his 40 years as a firefighter with the Chagrin Falls Fire Department and 25 years as a hazardous materials specialist — testified as to his training and experience through the Ohio Fire Academy in methamphetamine labs. Further, Vedder also has served as an instructor for the Ohio Fire Academy, teaching specifically about methamphetamine labs and the chemicals that are involved, the precursor chemicals, and the hazards that are present from those chemicals. Therefore, Vedder's testimony that salt and Coleman lantern fluid are used in the methamphetamine process as well as his explanation of the one-pot method for

making methamphetamine was based on his own personal knowledge and experience as established by the state. Additionally, Vedder's testimony related specifically to his own actions on the scene and why he undertook such actions, i.e., photographing items that are used in the methamphetamine process. Further, Vedder's testimony was helpful to determine the significance of the items found in Maust's bedroom. Accordingly, we find no error in the state's failure to provide an expert report with respect to Vedder; nor did the trial court abuse its discretion in allowing him to testify on these matters.

**{¶21}** The first assignment of error is overruled.

### C. Authentication and Chain of Custody

**{¶22}** In his second assignment of error, Maust argues that the trial court erred in admitting certain exhibits, over defense counsel's objection, that he contends were never properly authenticated under Evid.R. 901(A). We disagree.

**{¶23}** Like the first assignment of error, we apply an abuse of discretion in reviewing the trial court's decision to admit the exhibits. And here, we find no abuse.

**{¶24}** Evid.R. 901(A) provides for the authentication or identification of evidence prior to its admissibility. The rule provides, in pertinent part: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). By way of illustration, Evid.R. 901(B) provides that evidence may be properly authenticated by "testimony of witness with knowledge" that "a matter is what it is claimed to be." Further, the authentication requirement of Evid.R.

901(A) is a low threshold that does not require conclusive proof of authenticity, but only sufficient foundation evidence for the trier of fact to conclude that the evidence is what its proponent claims it to be. *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 21, citing *Yasinow v. Yasinow*, 8th Dist. Cuyahoga No. 86467, 2006-Ohio-1355, ¶ 81.

{¶25} Maust first challenges the admission of state's exhibit Nos. 60 and 61, which are two separate photographs (taken from different vantage points) depicting the same two-liter bottle. Contrary to Maust's assertion, the state properly authenticated these exhibits at issue during trial. First, the state offered the testimony of Vedder, who took the photographs at issue. Further, Robert additionally identified the photographs as depicting the bottle that he recovered outside of Maust's bedroom window. Although Robert was not present when the photograph was taken and therefore unfamiliar with the surroundings in the photograph, i.e., the garage of the fire department, Robert testified that the bottle in the photograph "looks like the same bottle" that he discovered. We find that Vedder's and Robert's testimony sufficiently satisfied the requirements of Evid.R. 901(A).

{¶26} Maust further contends, however, that the state failed to establish a chain of custody as to the bottle depicted in the exhibits.

{¶27} When dealing with chain of custody matters, the state bears the burden of establishing the proper chain of custody. *In re Lemons*, 77 Ohio App.3d 691, 693, 603 N.E.2d 315 (8th Dist.1991); *see also State v. Ferrara*, 7th Dist. Mahoning No. 14 MA 4,

2015-Ohio-3822, ¶ 14. To meet its burden, the state must only show that it is reasonably certain that substitutions, alterations, or tampering did not occur. *Id.* The state does not have to negate all possibilities of substitution or tampering. *Id.* Further, breaks in the chain of custody go to the weight of the evidence, not its admissibility. *State v. Howell*, 7th Dist. Mahoning No. 10-MA-148, 2012-Ohio-4349, ¶ 79, citing *State v. Blevins*, 36 Ohio App.3d 147, 150, 521 N.E.2d 1105 (10th Dist.1987).

{¶28} Maust contends that Robert's testimony fails to account for the handling of the bottle after Robert placed it in his garage for the police to recover and when the police actually collected the evidence. Maust's argument, therefore, focuses on an alleged break in the chain of custody prior to the state even obtaining the evidence. To the extent that Maust seems to argue that Robert improperly planted the evidence at the scene for the police to collect, such an argument goes to the weight of the evidence, not its admissibility. Our review reveals that the state properly established the chain of custody of the bottle depicted in exhibit Nos. 60 and 61 through Vedder's testimony, who detailed that the police recovered the bottle on January 19 from Robert's garage and then transported the bottle to the fire department on that same day where Vedder photographed it.

{¶29} Maust also challenges the trial court's admission of exhibit No. 63, which is a photograph of a plastic bag containing several items, including cold-medication packaging and discarded coffee filters, on the grounds that the exhibit was never authenticated. According to Maust, Robert was unable to identify the exhibit at trial

despite being the person who allegedly collected the items. But our review of the record reveals that Robert did in fact identify the exhibit at trial and testified that the photograph was an accurate and true depiction of the items that he collected while cleaning the house a few days following the arrest.

**{¶30}** Having found that the state properly authenticated these exhibits under Evid.R. 901, we find no merit to Maust's claim that the trial court abused its discretion in admitting these exhibits.

**{¶31}** The second assignment of error is overruled.

### D. Manifest Weight of the Evidence

**{¶32}** In his third assignment of error, Maust argues that his convictions are against the manifest weight of the evidence. We disagree.

**{¶33}** When an appellate court analyzes a conviction under the manifest weight standard, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Id.* Although the appellate court may act as a thirteenth juror, it should give due deference to the findings made by the factfinder. *Id.* at 388. Only in exceptional cases, where the evidence

"weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. *Id.*

### 1. *Illegal Manufacture or Cultivation of Drugs*

**{¶34}** R.C. 2925.04 governs the crime of illegal manufacture of drugs and provides in relevant part that "[n]o person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance."

**{¶35}** Maust first argues that the state's evidence of his manufacturing of methamphetamine relied exclusively on the evidence of the one-pot vessel as identified in state's exhibits Nos. 60 and 61. According to Maust, these exhibits were improperly admitted, and therefore, his conviction is unsupported by the weight of the evidence. But having already found that the trial court properly admitted these exhibits, we reject this argument.

**{¶36}** Alternatively, Maust further contends that, even if these exhibits were admissible, the trier of fact lost its way in giving the evidence any weight. Specifically, Maust argues that given the timing of when Robert discovered the bottle, i.e., the day following Maust's arrest, and the fact that the police did not discover it while on the premises on January 18, 2015, the bottle cannot be reasonably linked to him. Instead, Maust maintains that, based on his acrimonious relationship with Robert, the trier of fact should have assigned the evidence no weight. We disagree. The state's evidence revealed that Robert discovered the bottle outside of Maust's window in the snow. The evidence further revealed that Maust had surveillance cameras set up and likely observed

the police arriving to the residence. The trier of fact could have reasonably inferred that Maust discarded the bottle outside the window at that time. But regardless, even without the admission of state's exhibit Nos. 60 and 61, Special Agent Prill testified that his expert opinion as to Maust manufacturing methamphetamine would not have changed. Prill's testimony, along with the other overwhelming evidence collected at the scene on January 18, we cannot say that Maust's conviction is against the manifest weight of the evidence.

*2. Illegal Assembly or Possession of Chemicals Used to Manufacture*         *a Controlled Substance*

**{¶37}** Maust was convicted of illegal assembly or possession of chemicals used to manufacture a controlled substance under R.C. 2925.041(A), which provides as follows:

> No person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code.

**{¶38}** Maust argues that the trier of fact lost its way in finding that he possessed the necessary intent to support his conviction under R.C. 2925.041(A). While Maust acknowledges that the state presented evidence of his possession of chemicals used in the production of methamphetamine, he contends that the trier of fact lost its way in not finding that these items were being used to "serve household uses." But the evidence overwhelmingly belies this claim.

**{¶39}** We reject Maust's claim that it was reasonable for him to keep all of these household items in his bedroom because "he did not have the entire home to himself."

Aside from the unrebutted expert testimony specifically addressing that the proximity of these items in one room as a significant indication of manufacturing methamphetamine, the other evidence offered by the state overwhelming demonstrated that Maust had the requisite intent. Indeed, in addition to the chemicals found in Maust's bedroom, the police also recovered equipment used in making methamphetamine, such as the gas mask, protective coveralls, plastic tubing, filters, lab ware, and an industrial fan.

### 3. Drug Possession

**{¶40}** Maust was convicted of drug possession in violation of R.C. 2925.11(A), which provides in relevant part that "[n]o person shall knowingly obtain, possess, or use a controlled substance."

**{¶41}** Although couched as a manifest weight of the evidence challenge, Maust argues that the state failed to produce any evidence that methamphetamine was found in the residence, which goes to the sufficiency of the evidence. Regardless, under either standard, Maust's argument fails. Contrary to Maust's assertion, Officer Shane Bates testified that he discovered methamphetamine after moving Maust's dresser. Bates specifically testified that the powdery substance he discovered was identified by both field tests and lab tests as methamphetamine. The state offered into evidence the report that expressly identified the substance as containing 4.86 grams of methamphetamine, which defense counsel expressly stipulated to before and during trial. We therefore find no merit to Maust's unsupported claim.

### 4. Possessing Criminal Tools and Forfeiture Specifications

**{¶42}** R.C. 2923.24(A) governs the offense of possessing criminal tools and provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance."

**{¶43}** With respect to the possessing criminal tools count and forfeiture specifications, Maust argues that these charges cannot stand because the other convictions must be vacated. Specifically, he argues that the weight of the evidence does not support any finding of criminal conduct and therefore these charges, which he argues are dependent on the others, cannot stand. But having already found that the trier of fact properly convicted Maust on the other charges, we find no merit to Maust's claim.

**{¶44}** Overall, this is not the exceptional case where the trier of fact lost her way or the evidence weighs heavily against the conviction. Based on the state's expert testimony, the testimony of the responding police and safety officers, as well as the physical evidence collected from Maust's bedroom, we find that Maust's convictions are supported by the weight of the evidence. Accordingly, the third assignment of error is overruled.

### E. Ineffective Assistance of Counsel

**{¶45}** In his final assignment of error, Maust argues that he was denied effective assistance of counsel because his trial counsel (1) failed to voir dire Vedder on his expert opinion prior to the trial court qualifying Vedder as an expert, (2) failed to object to irrelevant and prejudicial testimony, and (3) failed to file a motion to suppress or object to the evidence found in the "unconstitutional search" of Maust's bedroom.

**{¶46}** To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

**{¶47}** The burden is on appellant to prove ineffectiveness of counsel. *State v. Smith*, 17 Ohio St.3d 98, 477 N.E.2d 1128 (1985). Trial counsel is strongly presumed to have rendered adequate assistance. *Id.*; *Strickland* at 699. "Trial strategy or tactical decisions cannot form the basis for a claim of ineffective counsel." *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980). Additionally, the failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial. *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 37; *see also State v. Henderson*, 8th Dist. Cuyahoga No. 88185, 2007-Ohio-2372.

*1. Failure to Voir Dire Vedder*

**{¶48}** Maust first argues that his trial counsel was deficient by failing to request a voir dire of Vedder's qualifications when it became apparent that the trial court was permitting him to offer expert testimony. As discussed above, however, Vedder did not provide expert testimony. His testimony was properly admissible under Evid.R. 701.

Moreover, even assuming for the sake of Maust's argument that the trial court "qualified" Vedder as an expert and his testimony constituted "expert testimony," Vedder easily satisfied the requirements of Evid.R. 702 by virtue of his specialized knowledge, experience, and training related to the production of methamphetamine. We therefore cannot say that trial counsel was deficient by failing to request a voir dire of Vedder's qualifications.

### 2. Failure to Object

{¶49} Next, Maust argues that trial counsel failed to object to certain portions of Robert's testimony that cast Maust in a negative light. Specifically, Maust complains of Robert's testimony that "he had attempted to evict [Maust], was afraid of confrontation with [Maust], and felt that [Maust] only worked when he felt like it." Maust contends these statements were neither relevant under Evid.R. 401 nor admissible under Evid.R. 403. But defense counsel's failure to object to this testimony goes to trial strategy in this case. These statements supported the defense's theory that Robert had a vendetta against Maust, which was relevant to the defense's attempt to discredit the evidence provided by Robert to the police following the initial search of the room. Accordingly, we find no basis to conclude that this trial strategy constitutes ineffective assistance of counsel.

### 3. Motion to Suppress

{¶50} Maust additionally argues that his trial counsel was ineffective by failing to file a motion to suppress the evidence discovered in his room. Maust argues that the

police lacked his consent to search his room and that neither his father nor grandfather had the authority to consent to a search of his room.

{¶51} "'[F]ailure to file a motion to suppress is not per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Failure to file a motion to suppress constitutes ineffective assistance of counsel only if, based upon the record, the motion would have been granted. *State v. Robinson*, 108 Ohio App.3d 428, 433, 670 N.E.2d 1077 (3d Dist.1996).

{¶52} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "Under applicable legal standards, the State has the burden of showing the validity of a warrantless search, because warrantless searches are 'per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions.'" *State v. Hilton*, 2d Dist. Champaign No. 08-CA-18, 2009-Ohio-5744, ¶ 21-22, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988).

{¶53} The record reflects that the police went to the Kleber Court residence with an arrest warrant for Maust. There is no dispute that Maust's father answered the door and allowed the police officers entry inside the home. Maust's father further directed the officers up to Maust's bedroom, where they knocked on Maust's bedroom door, announced their presence with a warrant for Maust's arrest, and told him to exit the room.

Maust complied with the officers' order and exited the room, leaving his bedroom door open. Maust does not challenge the lawfulness of the police officers' initial entry inside his house, their presence outside his room to execute the arrest warrant, or their protective sweep of the room following his arrest. Instead, he argues that the police officers had no authority to subsequently search and "collect evidence" from his bedroom based on the consent forms signed by his father and grandfather.

{¶54} But we need not reach the issue of the authority of Maust's father and grandfather to consent to a search of Maust's bedroom or whether the officers reasonably relied on their apparent authority. Here, a motion to suppress would have been futile on another ground: the officers' belief of an active methamphetamine lab.

{¶55} "Exigent circumstances is an exception to the search warrant requirement, where probable cause exists to believe that a crime has been committed and the circumstances suggest a true emergency or danger exists." *State v. Portman*, 2d Dist. Clark No. 2013-CA-68, 2014-Ohio- 4343, ¶ 24; *see also State v. Applegate*, 68 Ohio St.3d 348, 350, 626 N.E.2d 942 (1994), syllabus.

{¶56} R.C. 2933.33(A) states:

> If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamines causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture.

{¶57} As recognized by the Ninth District

> [C]landestine methamphetamine laboratories pose a per se danger to occupants, officers, and the community, and law enforcement officers need only a reasonable belief that a structure contains a methamphetamine laboratory to justify a search under the emergency-aid exception set forth in R.C. 2933.33(A).

*State v. Timofeev*, 9th Dist. Summit No. 24222, 2009-Ohio-3007, ¶ 25-26. Ohio courts have consistently applied R.C. 2933.33(A) to permit officers to enter a residence without a warrant where they possessed probable cause to believe a methamphetamine lab was located inside or near the residence. *State v. Robinson*, 4th Dist. Lawrence No. 13CA18, 2015-Ohio-2635, ¶ 51 (providing a detailed list of Ohio courts applying the statute and finding that exigent circumstances exists to obviate the warrant requirement).

{¶58} Here, based on the observations of the Independence police officers that first went to the premises to execute the arrest warrant on Maust, the record contains evidence of exigent circumstances that would have justified the officers' search even without a signed consent form. Officer James Martin testified that he was "stunned" upon seeing Maust's room, believing that "we're possibly in the middle of a methamphetamine lab." Similarly, Officer Shane Bates testified that, after Maust exited his room, he immediately observed "several things through the open door that alerted" him to a potential problem, including multiple butane tanks, tin foil, and a white bottle with lye. He further noted that upon conducting a protective sweep of the room, he observed a large container of acetone, an exhaust fan, a burn mark on the carpeting, surveillance cameras, and an uncovered jar "with a white acidic type of water." Based on the chemicals he observed in the area, Officer Bates testified that he promptly backed

out of the area, "very much worried about hazards." Bates further testified that he detected a "chemical smell" in the room. Under such circumstances, we find that exigent circumstances existed to justify the officers' actions in this case, which included requesting the immediate help of a hazardous materials team to secure the environment and collect the evidence.

{¶59} Thus, based on the evidence in the record, we cannot say that defense counsel was deficient in failing to file a motion that would have been futile.

{¶60} Accordingly, having found that Maust was not denied effective assistance of trial counsel, we overrule his final assignment of error.

{¶61} We note, however, that the sentencing journal entry in this case erroneously references marijuana instead of methamphetamine with respect to Count 1 of the indictment.[2] As stated above, Maust was convicted of illegal manufacture or cultivation of drugs in violation of R.C. 2925.04(A), specifically methamphetamine.

{¶62} Judgment affirmed and case remanded for the limited purpose of the trial court to issue a nunc pro tunc journal entry to properly reflect the finding of guilt with respect to Count 1.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

---

[2] We recognize that the title of R.C. 2925.04 is "[I]llegal manufacture of drugs or cultivation of marihuana" and therefore the clerical error most likely arose by adopting an abbreviated version of the title. But because the journal entry states that "the court found the defendant guilty of illegal manufacture/cultivation of marijuana," the clerical error must be corrected.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for correction and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

LARRY A. JONES, SR., A.J., and
EILEEN A. GALLAGHER, J., CONCUR