[Cite as *State v. Ladson*, 2022-Ohio-3670.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 111211 |
| v. | : | |
| JAMES LADSON, | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 13, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-656142-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin M. Karkutt and Alicia Harrison, Assistant Prosecuting Attorneys, *for appellee.*

Joseph V. Pagano and Marcus Sidoti, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant James Ladson ("Ladson") appeals from his conviction for murder and other crimes following a jury trial. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} On January 27, 2021, a Cuyahoga County Grand Jury indicted Ladson on one count of murder in violation of R.C. 2903.02(A), one count of murder in violation of R.C. 2903.02(B), one count of voluntary manslaughter in violation of R.C. 2903.03(A), one count of felonious assault in violation of R.C. 2903.11(A)(1), one count of felonious assault in violation of R.C. 2903.11(A)(2), and one count of having weapons while under disability in violation of R.C. 2923.13(A). With the exception of the having weapons while under disability charge, each count carried one- and three-year firearm specifications.

{¶ 3} Before trial began, the state dismissed the voluntary manslaughter charge. Ladson waived his right to a jury trial on the having weapons while under disability charge, and the case proceeded to a jury trial on the remaining counts on November 29, 2021.

{¶ 4} These charges arose from a July 25, 2020 incident in which Allante Riggins ("Riggins") was shot and killed in the parking lot of Eagle Fresh Mart on Kinsman Road and East 75th Street in Cleveland, Ohio. That day, Riggins was helping his sister Arisia move out of her home, located around the corner from Eagle Fresh Mart. Shortly after 8 p.m. that evening, Riggins went to Eagle Fresh Mart. Riggins, who had recently been diagnosed with schizophrenia, began having what appeared to be a schizophrenic episode in the parking lot. Security footage from Eagle Fresh Mart shows Riggins pacing in the parking lot and appearing agitated. Around 8:15 p.m., security footage showed a dark blue Infiniti sedan pull

into the parking lot. A man exited the vehicle from the rear passenger door. Several minutes later, the driver, subsequently identified as Ladson, exited the vehicle. Ladson did not enter the store and instead stood on the edge of the parking lot near his vehicle, appearing to have a conversation with several other men in the parking lot. Around 8:30 p.m., Ladson crossed the parking lot to speak to the driver of a Jeep parked in front of the store. Ladson stood inside the open driver door of the Jeep and appeared to engage in a transaction with the driver of the Jeep, who was sitting in the driver's seat of the Jeep. Ladson then returned to his car. Ladson appeared to get back into the driver's seat of the Infiniti while the passenger remained standing outside the car.

{¶ 5} Several minutes later, Riggins reappeared at the edge of the parking lot, near where the Infiniti was parked. Riggins walked past the Infiniti and entered the store. Shortly thereafter, Riggins exited the store and walked the length of the parking lot back towards the Infiniti. Riggins appeared to exchange words with the passenger of the Infiniti, who then got back into the car. Riggins remained near the Infiniti and appeared to be shouting at the vehicle. Security footage showed Riggins begin to walk out of the parking lot and away from the rear of the Infiniti, but he turned around to approach the vehicle again, appearing to lunge at the vehicle in an agitated manner. This continued for several minutes, with Riggins pacing around the vehicle. At approximately 8:39 p.m., Ladson and the front passenger of the Infiniti exited the vehicle and confronted Riggins. The passenger walked around the rear end of the vehicle with his right arm raised toward Riggins.

Meanwhile, Riggins approached Ladson on the driver's side of the vehicle and Ladson raised his right arm and appeared to shoot Riggins in the face. Riggins collapsed, and Ladson and the passenger got back into the Infiniti and sped out of the parking lot. The parking lot, which had been relatively full until this point, quickly began to empty.

{¶ 6} Soon after the shooting, Arisia heard that her brother had been shot outside the store. Security footage shows Arisia and her boyfriend pull into the parking lot near where Riggins was shot. Shortly thereafter, Cleveland police arrived at the scene.

{¶ 7} At trial, the state called Riggins's sisters, Arisia and Adora Riggins, who both testified as to their brother's mental health and the events of July 25, 2020, before Riggins went to Eagle Fresh Mart. The state also called one of the responding officers, Cleveland police officer Brooklyn Barnes ("Barnes"), who testified that upon arriving to the scene, she observed Riggins face-down in the parking lot. Barnes testified that she turned Riggins over and observed a gunshot wound to his head. Barnes began administering first aid and CPR while her partner attempted to control the other people on the scene. Several minutes later, EMS arrived and began giving Riggins medical attention.

{¶ 8} The state also called Cleveland police detectives Zara Hudson ("Hudson") and Richard Tusing ("Tusing"), who testified as to their respective involvement with the investigation in this case. Hudson was initially assigned to the case, and he responded to the scene on July 25, 2020. Hudson canvassed the

scene for evidence and ultimately made contact with the store clerk and viewed and downloaded the security footage showing the parking lot before, during, and after the incident. Hudson prepared an initial report in this case, but the case was ultimately turned over to Tusing once it became clear that Riggins had died.

{¶ 9} Tusing testified that when the case was assigned to him, Ladson had been identified as a person of interest in the case. He went on to testify that upon being assigned to the case through his role in the homicide unit, he reviewed the file, including the security video, and subsequently obtained information on Ladson and the Infiniti from the Bureau of Motor Vehicles. Tusing determined that a 2008 Infiniti M35 was registered to Ladson at the time of the shooting. Tusing reviewed body camera footage from a traffic stop of Ladson unrelated to this incident. Ultimately, Tusing was able to identify Ladson as the driver of the Infiniti who had shot Riggins.

{¶ 10} The state also called various expert witnesses to testify about the limited physical evidence in this case. Dr. Dan Galita ("Dr. Galita"), a forensic pathologist and medical examiner at the Cuyahoga County Medical Examiner's Office, testified that he completed an autopsy of Riggins. Dr. Galita testified that the cause of Riggins's death was a gunshot wound to the left cheek with skeletal, visceral, and soft tissue injuries, and the manner of death was homicide. The state also presented evidence that the nature of Riggins's injuries, including stippling on his face, meant that the shooter fired at Riggins in close range.

{¶ 11} Following the state's case, Ladson made a Crim.R. 29 motion for acquittal, which the trial court denied. Ladson called one witness on his behalf. Cheri Klouda ("Klouda") testified that she and her husband owned and operated Klouda Automotive, a business located on Carnegie Avenue in Cleveland, Ohio that did repairs and bodywork to vehicles. Klouda testified that she is in charge of the paperwork and recordkeeping for the business. Klouda testified that her husband did various work on a 2008 Infiniti G35 for Ladson. Defense counsel introduced the receipt for this work showing that Ladson brought his vehicle to Klouda Automotive on July 18, 2020, and retrieved his vehicle on August 1, 2020, after paying in full for the services. Klouda testified that she remembered the vehicle being on the business's lift at that time because they had difficulty sourcing some of the parts needed for the work.

{¶ 12} Defense counsel then renewed its Crim.R. 29 motion, and the court denied this motion. Defense counsel also requested that the court instruct the jury on voluntary manslaughter, and the court denied the request.

{¶ 13} On December 3, 2021, the jury returned its verdict. The jury found Ladson not guilty of murder in violation of R.C. 2903.02(A). The jury found Ladson guilty of murder in violation of R.C. 2903.02(B), both counts of felonious assault, and the corresponding firearm specifications. The court found Ladson guilty of having weapons while under disability.

{¶ 14} On January 10, 2022, the court held a sentencing hearing. Defense counsel and the assistant prosecuting attorney addressed the court. Riggins's sister

Arisia also addressed the court. The court sentenced Ladson to life in prison with the possibility of parole after 15 years, consecutive to a three-year term for the firearm specification. The court also sentenced Ladson to 36 months on the having weapons while under disability charge, to be served concurrently.

{¶ 15} Ladson appeals, presenting five assignments of error for our review:

I. The trial court erred by admitting the video and photographic evidence over appellant's objection and in violation of Evid.R. 803(6) and Evid.R. 901(C).

II. The trial court erred by denying appellant's request for an instruction on voluntary manslaughter.

III. The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

IV. Appellant's convictions are against the manifest weight of the evidence.

V. The admission of the lead detective's narration and video footage and his opinions that the images show defendant-appellant engaging in the offenses charged in the indictment, violated the rules of evidence, invaded the province of the jury, and deprived him of his right to due process and a fundamentally fair jury trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

**Legal Analysis**

**I. Video and Photographic Evidence**

{¶ 16} In Ladson's first assignment of error, he argues that the trial court erred by admitting video and photographic evidence over defense counsel's objection and in violation of Evid.R. 803(6) and 901.

{¶ 17} The decision whether to admit or exclude evidence is subject to review under an abuse of discretion standard, and reviewing courts will not disturb evidentiary rulings absent a clear showing that the trial court abused its discretion and materially prejudiced a party. *State v. Barnes*, 8th Dist. Cuyahoga No. 104045, 2017-Ohio-383, ¶ 17, citing *State v. Lyles*, 42 Ohio St.3d 98, 99, 537 N.E.2d 221 (1989). The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463.

{¶ 18} With respect to video evidence, Ladson objected to the admission of state's exhibit Nos. 61, 62, and 63. Exhibit No. 61 is store surveillance footage from approximately 8:00 p.m. to 8:30 p.m., exhibit No. 62 is a continuation of store surveillance footage beginning at approximately 8:30 p.m., and exhibit No. 63 is a zoomed in excerpt of the surveillance footage in exhibit No. 62 showing the shooting. Ladson objected to the admission of this footage, arguing that no one from the store testified as to how the videos were prepared or whether they were authentic. With respect to photographic evidence, Ladson objected to state's exhibit Nos. 69-77, which were screenshots of a man standing near a vehicle that Adora Riggins provided to law enforcement. Adora testified that she had a personal relationship with one of the store employees, and he provided them to her after the incident. Ladson objected to the admission of these photos, arguing that no

evidence was presented showing whether the photographs were authentic or accurate.

{¶ 19} In this appeal, Ladson argues that the videos and photos constitute hearsay because they were introduced to prove that a person in the video committed an offense consistent with Tusing's own interpretation and narration of what the videos and photos showed.

{¶ 20} Evid.R. 901 provides, in relevant part:

(A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support that the matter in question is what its proponent claims.

(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

"'The authentication requirement of Evid.R. 901(A) is a low threshold that does not require conclusive proof of authenticity, but only sufficient foundation evidence for the trier of fact to conclude that the evidence is what its proponent claims it to be.'" *State v. Heard*, 8th Dist. Cuyahoga No. 110722, 2022-Ohio-2266, ¶ 31, quoting *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 21, citing *Yasinow v. Yasinow*, 8th Dist. Cuyahoga No. 86467, 2006-Ohio-1355, ¶ 81.

{¶ 21} Here, while Ladson correctly points out that none of the testifying witnesses observed the shooting itself, we disagree that the evidence was not properly authenticated. Video and photographic evidence may be admissible under

one of two theories: the "pictorial testimony" theory or the "silent witness" theory. *Midland Steel Prods. Co. v. Internatl. Union, United Auto., Aero. & Agricultural Implement Workers, Local 486*, 61 Ohio St.3d 121, 129, 573 N.E.2d 98 (1991). Under the silent witness theory, the evidence is a "'silent witness' which speaks for itself, and is substantive evidence of what it portrays independent of a sponsoring witness," and the evidence may be admitted "upon a sufficient showing of the reliability of the process or system that produced the evidence." *Id.*

{¶ 22} In this case, the detective who responded to the scene testified that he personally obtained the surveillance footage from the business. He also testified that the footage itself accurately reflected the scene of the shooting. This testimony is sufficient to have properly authenticated the video evidence. *State v. Freeze*, 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 68.

{¶ 23} With respect to the screenshots provided to law enforcement by Riggins's sister Adora, we find that they also satisfy the low threshold for authentication. Adora testified that she received the messages containing the screenshots from a store employee. This is sufficient to authenticate the photos. *State v. Primous*, 2020-Ohio-912, 152 N.E.3d 1002, ¶ 22 (8th Dist.).

{¶ 24} Because the video and photo evidence in question was properly authenticated pursuant to Evid.R. 901, we cannot conclude that the trial court abused its discretion in admitting this evidence over defense objection. Therefore, Ladson's first assignment of error is overruled.

## II. Jury Instruction

{¶ 25} In Ladson's second assignment of error, he argues that the trial court erred by denying his request for a jury instruction on voluntary manslaughter. Specifically, he argues that the grand jury concluded there was probable cause to charge Ladson with voluntary manslaughter and that the evidence presented at trial supported an instruction on voluntary manslaughter.

{¶ 26} A trial court's decision to grant or deny a requested jury instruction is reviewed under an abuse of discretion standard. *State v. Williams*, 8th Dist. Cuyahoga No. 90845, 2009-Ohio-2026, ¶ 50. Specifically, a defendant charged with murder is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter. *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992), citing *State v. Tyler*, 50 Ohio St.3d 24, 37, 553 N.E.2d 576 (1990).

{¶ 27} Voluntary manslaughter as laid out in R.C. 2903.03(A) provides:

> No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.

Ladson argues that the evidence in this case shows that Riggins "was engaged in a schizophrenic episode, he was highly agitated, appeared to be yelling, and lunging towards the driver of the suspect video." Ladson argues that Riggins's behavior provoked both the passenger and driver

{¶ 28} We agree that the evidence reflects that Riggins was behaving in an agitated manner and appeared at various points to be shouting and lunging at the Infiniti. Further, based on the testimony of Riggins's sisters regarding his schizophrenia diagnosis and lack of compliance with his medication, it is likely that he was experiencing a schizophrenic episode.

{¶ 29} We disagree with Ladson that this constitutes sufficient evidence to warrant a jury instruction on voluntary manslaughter. We agree with the trial court's statement that Riggins's behavior constituted insufficient provocation for purposes of R.C. 2903.03(A). Further, Ladson argues that "mutual combat" situations like the incident in this case are "classic voluntary manslaughter situations" according to the Ohio Supreme Court. *Shane*, 63 Ohio St.3d at 635, 590 N.E.2d 272. Ladson does not attempt to define mutual combat or otherwise explain his assertion that this situation was one of mutual combat. Our review of the record shows that while Riggins was clearly agitated, Riggins and Ladson were not engaged in mutual combat. Indeed, until moments before Riggins was killed, Ladson was in the driver's seat of his vehicle with the door closed and nothing was preventing him from driving away. Instead, Ladson elected to exit the vehicle and approach Riggins, immediately shooting him in the face at close range.

{¶ 30} In light of this evidence, we cannot say that the trial court abused its discretion in denying Ladson's request to issue a jury instruction on voluntary manslaughter. Therefore, Ladson's second assignment of error is overruled.

### III. Sufficiency of the Evidence

{¶ 31} In his third assignment of error, Ladson argues that the trial court erred when it denied his motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions. Specifically, Ladson asserts that the state failed to establish the identity of the individual depicted shooting Riggins in surveillance footage. Ladson further points to the absence of certain evidence, such as eyewitness testimony, cell phone data placing Ladson at the scene, any explanation as to how Ladson became a person of interest in the case, any DNA evidence, or any physical or forensic evidence tying Ladson to the scene or the incident.

{¶ 32} Crim.R. 29(A) provides that a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 33} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a

conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 34} With respect to whether the state presented sufficient evidence as to Ladson's identity, we note that the state presented the video and photo evidence discussed at length above, as well as body camera footage showing Ladson being pulled over for a traffic stop in a car with the same features as the car in the video and vehicle registration evidence showing that Ladson owned a blue 2008 Infiniti at the time of this incident. Viewing this evidence in a light most favorable to the state, it is more than sufficient for the jury to have concluded that Ladson was the driver of the car and the individual who shot Riggins.

{¶ 35} With respect to Ladson's extensive list of evidence that was not presented, we note that "'[p]roof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *Brook Park v. Gannon*, 2019-Ohio-2224, 137 N.E.3d 701, ¶ 24 (8th Dist.), quoting *State v. Zadar*, 8th Dist. Cuyahoga No. 94698, 2011-Ohio-1060, ¶ 18, citing *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988). Therefore, the fact that the state may not have presented certain kinds of evidence has no bearing on whether it presented sufficient evidence of Ladson's guilt.

{¶ 36} For these reasons, Ladson's third assignment of error is overruled.

## IV. Manifest Weight

{¶ 37} In his fourth assignment of error, Ladson argues that his convictions are against the manifest weight of the evidence. Specifically, he argues that the evidence against him was poor and unreliable, reiterating the various forms of evidence that he argues should have been presented at trial and arguing that the state's case was based on a minimal investigation. In addition to reiterating his issues with the photo and video evidence discussed above, Ladson points out that he presented evidence that his 2008 Infiniti was not in his possession on the date of the incident, that the initial police reports in the case identified the Infiniti's passenger as the shooter rather than the driver, that the police never recovered Ladson's vehicle, and that no eyewitnesses testified despite the parking lot being crowded at the time of the shooting.

{¶ 38} Unlike a challenge to the sufficiency of the evidence, a manifest weight challenge attacks the quality of the evidence and questions whether the state met its burden of persuasion at trial. *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 25, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When reviewing a manifest weight challenge, a court reviews the entire record, weighing all evidence and reasonable inferences and considering the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541.

{¶ 39} "Issues relating to the credibility of witnesses and the weight to be given are primarily for the trier of fact." *State v. Matthews*, 8th Dist. Cuyahoga No. 97916, 2012-Ohio-5174, ¶ 34, citing *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982), and *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Further, the trier of fact is free to believe all, part, or none of the testimony of each witness. *Id.*, citing *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 40} Following a thorough review of the record, we cannot conclude that this is the exceptional case in which the trier of fact lost its way. The entire incident was captured on video, and the state presented various evidence showing that Ladson was the individual depicted in the video. With respect to the evidence that Ladson's vehicle was not in his possession on the date of the incident, the record reflects that the vehicle allegedly at Klouda Automotive was a 2008 Infiniti G35, while the BMV records presented at trial reflect that he owned a 2008 Infiniti M35. Further, the state presented evidence at trial that Ladson sold his vehicle after this incident and police were unable to locate the vehicle. Any claimed deficiencies in the state's investigation of this case, including discrepancies between the original police report and other evidence, are not such that the jury clearly lost its way in finding Ladson guilty of murder and felonious assault. For example, the statement

in the police report that the Infiniti passenger shot Riggins is clearly undermined by not only witness testimony and the surveillance footage, but also Dr. Galita's testimony about the trajectory of the bullet. Finally, while the state's case likely would have been bolstered by eyewitness testimony, the lack of eyewitness testimony does not undermine Ladson's convictions, let alone require a conclusion that his convictions were against the manifest weight of the evidence. Because this case was not a manifest miscarriage of justice, Ladson's fourth assignment of error is overruled.

## V. Tusing's Testimony

{¶ 41} In his fifth and final assignment of error, Ladson argues that the admission of Tusing's narration of the video footage and his opinions that the images show Ladson engaging in the offenses charged in the indictment violated the rules of evidence, invaded the province of the jury, and deprived him of his right to due process and a fundamentally fair trial guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Specifically, Ladson argues that the trial court abused its discretion when it overruled defense objections to Tusing's testimony that the person in the video seen shooting Riggins was Ladson because the suspect's identity was the primary issue to be determined by the jury.

{¶ 42} Ladson cites Evid.R. 602 in support of his assertion that Tusing should not have testified about Ladson's identity because he had no personal knowledge of the matter. Ladson also argues that because Tusing was not qualified as an expert witness, his testimony was limited under Evid.R. 701 to opinions or

inferences rationally based on his perception and helpful to a clear understanding of a witness's testimony or determination of a fact in issue.

{¶ 43} Evid.R. 602 provides that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." The rule further states that "[e]vidence to prove personal knowledge may, but need not, consist of the witness' own testimony." Evid.R. 602.

{¶ 44} While Tusing did not personally obtain the surveillance footage, he was the lead investigator assigned to the case and therefore had adequate personal knowledge to testify as to the contents of the footage. *State v. Groce*, 2019-Ohio-1007, 133 N.E.3d 930, ¶ 46 (10th Dist.). Therefore, his testimony did not violate Evid.R. 602.

{¶ 45} Evid.R. 701 provides that lay witness testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Under Evid.R. 701, "if testimony is based on an officer's training and experience, related to the officer's personal observations during an investigation, and helpful to determine facts in issue, the testimony is properly admitted as lay testimony." *State v. Harris*, 8th Dist. Cuyahoga No. 108624, 2020-Ohio-4461, ¶ 53, citing *State v. Maust*, 8th Dist. Cuyahoga No. 103812, 2016-Ohio-3171, ¶ 18. Further, impressions or conclusions are admissible if they assist the jury's understanding or delineate a

fact in issue. *State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511, ¶ 25, citing *State v. Miller*, 5th Dist. Richland No. 2009-CA-0113, 2010-Ohio-3488, ¶ 50.

{¶ 46} Here, Tusing's testimony was based on his perception, his role in the investigation of this case, and his extensive review of the surveillance footage and subsequent investigation and identification of Ladson such that it was helpful to a clear understanding of his testimony and determination of facts in issue. Therefore, the testimony did not violate Evid.R. 701. The trial court did not abuse its discretion in permitting Tusing to testify as to the contents of the surveillance footage. Ladson's fifth assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR